Johnny McCLENDON, Jr., Plaintiff–Appellant,

v.

INDIANA SUGARS, INCORPORATED, Defendant–Appellee.

No. 96–1634.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1996.

Decided March 12, 1997.

Rick C. Gikas (argued), Gikas & Sams, Merriville, IN, for plaintiff–appellant.

Carol B. Manzoni, Laura A. Lindner (argued), Ross & Hardies, Chicago, IL, for defendant–appellee.

Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

In a complaint brought against his employer, Indiana Sugars, Inc. ("ISI"), Johnny McClendon first alleged racial harassment and discrimination and later amended his complaint to add an allegation of retaliatory

termination, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. The district court granted summary judgment to ISI. Mr. McClendon then timely appealed only the second issue, his claim that he was discharged in retaliation for filing this lawsuit. For the reasons that follow, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Indiana Sugars, located in Gary, Indiana, processes and distributes sugar. Its president since 1983 has been Ronald J. Yonover. Johnny McClendon, an African–American male, began working for ISI as a janitor in 1982. He was promoted to shift foreman and then, in 1987, to warehouse manager. Mr. McClendon was responsible for overseeing all warehouse operations during his shift, including shipping, receiving and storing sugar and maintaining accurate inventory counts. His immediate supervisor at ISI was Hugh Mendenhall, who became Director of Operations in September 1987. In fact, it was Mendenhall who recommended Mr. McClendon's promotion to warehouse manager.

In 1993 Mr. McClendon filed two complaints with the Equal Employment Opportunity Commission ("EEOC") and the Indiana Civil Rights Commission. The first alleged race-based disparate treatment; the second alleged retaliation. The factual predicates underlying Mr. McClendon's employment discrimination complaints were presented to the district court. That court granted summary judgment to ISI with respect to those allegations, and that determination has not been appealed. Mr. McClendon asks only that we review the district court's grant of summary judgment with respect to the retaliatory claim.

Although our review is limited to the retaliatory discharge claim, we shall set forth, in abbreviated fashion, the allegations that formed the basis of the discrimination complaint. In May 1989, when ISI was experiencing significant losses due to the theft of sugar from its inventory, Mendenhall issued a memo to all employees announcing that ISI would begin random searches of employees and their possessions. Twice Mr. McClendon was accused of stealing sugar, and each time his property was subjected to a search by company officials: Once, Mendenhall searched his garage; another ISI manager later searched Mr. McClendon's truck for stolen sugar and called McClendon a "black thief." In neither search was anything found. Mr. McClendon reported this second incident to his superior, but no disciplinary action was taken. He then filed a complaint with both the EEOC and the Indiana Civil Rights Commission on January 14, 1993, alleging race-based disparate treatment. On March 8, 1993, Mendenhall sent Mr. McClendon a letter of apology for any offense caused by the company's investigations of the thefts. On April 30, 1993, he filed another complaint, alleging retaliation when a white management trainee was given overtime work and he was not. On June 27, 1994, the EEOC issued a right to sue letter. Mr. McClendon filed a timely complaint in the district court.

We now turn to the retaliation allegation that Mr. McClendon brings for our review. With respect to this matter, the parties focus on a one-week time period (September 16–23, 1994), and on the deposition testimony of Mr. McClendon and Mendenhall, the affidavits of Mendenhall and Yonover, and related exhibits. On Friday, September 16, 1994, four days before Mr. McClendon filed this action in the district court, Mendenhall sent a memo asking the operations managers to list their five main performance goals. Mendenhall stated in his deposition that the list was to be used for evaluation purposes at the next performance reviews of the managers. However, Mr. McClendon believed he was being singled out to do this listing. Mendenhall reported that McClendon came to his office and became very loud and angry. Mr. McClendon, however, stated that, although he was angry at first, he did not raise his voice during this conversation. Mendenhall assured Mr. McClendon that all operations managers were required to provide a list of goals and asked McClendon to "tone it down." However, Mr. McClendon did not believe that everyone was being required to

list goals. He told Mendenhall that it was not a fair request, but that he would comply. According to Mendenhall, Mr. McClendon stated that he could do or say whatever he wanted as long as he did not use vile language or threaten Mendenhall, and that he had a right to consult with someone before responding to Mendenhall's directive. Mr. McClendon denied making such a statement. Nevertheless, he admits that he did tell Mendenhall that he would consult with someone before complying with the memo; he explained in his deposition that he meant he needed someone to explain what he was supposed to do or not to do. Mr. McClendon stated that he did make the "goals" list he had been asked to make. He also testified that he did not recall any mention made, during this meeting with Mendenhall, of his race, the EEOC charges he had filed, or a lawsuit.

On September 22, 1994, Mendenhall gave Mr. McClendon a written warning stating that any future incidents of insolent or disrespectful behavior would not be tolerated and

would result in disciplinary action, including possible termination.[1] Mr. McClendon responded with a memorandum, dated September 23, 1994, to Mendenhall and Yonover concerning his conduct on September 16. In that memorandum, he stated that, although Mendenhall apparently had perceived his conduct to be insubordinate and aggressive, he did not intend to appear hostile. Nevertheless, he questioned the motivation for Mendenhall's order and stated that he felt his integrity had been compromised. He concluded by stating that he felt the need to "seek outside consultation on each action" he would take.[2]

On the afternoon of September 23, 1994, Yonover met with Mr. McClendon and Mendenhall in his office. Yonover stated in his affidavit that he intended to reprimand Mr. McClendon for his insubordinate conduct on September 16 and to warn him that Indiana Sugars would not tolerate insubordination. Yonover explained to Mr. McClendon that ISI depends on its employees to follow their

1. Mendenhall's September 22 letter to Mr. McClendon states:

This letter is to document our meeting of Friday, September 16, 1994. It is also to advise you that insolent and disrespectful behavior cannot be tolerated. This is unacceptable amongst your peers, staff members and, in this particular instance, your immediate supervisors.

Contrary to your statement that you can "say and do whatever you want as long as you don't threaten or use vile language" you should note this will not be tolerated.

You should be aware that you will be required to do things that other management personnel are not required to do just as they have and will continue to be required things you do not have to do.

You will also be required to perform your normal functions without advice of counsel. This attitude and your expression of such has been witnessed by vendors, contractuals, as well as management personnel. This is undermining management's ability to function.

Future incidents will lead to disciplinary action up to and including discharge.
R. 51, Ex. B (Pl. Ex. 16).

2. The full text of Mr. McClendon's memorandum of September 23, 1994 to Yonover and Mendenhall follows:

This memo is in response to the memo given to me on September 22, 1994, pertaining to our conference on September 16.

It has been made clear to me that our discussion on September 22, 1994 was taken out of context. Apparently you perceived my addressing my concerns regarding memo dated 09/16/94 as insubordinate and aggressive.

I would like to make it clear that it was not my intention to come across as hostile, but rather to simply express my concerns regarding what the intentions of memo dated 09/16/94 were. I could not, and still cannot, fully understand why I was given the order to outline my job responsibilities and goals, which I might add, I had previously done. In addition to that I was under the impression that up until September 22, 1994, I was the only manager required to do that. Again, I would like to make it clear that I am not refusing to do what is required. I am however, questioning the motives behind it.

As a dedicated employee of this company for the past thirteen years, I feel that' I have the right to address a situation that I know is not entirely impartial. I should be able to do so without being inadvertently accused of being hostile and insubordinate.

I now feel that my integrity has been compromised, my motives questioned, and my abilities doubted, which is very unfortunate. Although I do not wish to cause animosity or create a hostile environment, I now believe I must seek outside consultation on each action I take, in order to safeguard my position with Indiana Sugars, Inc.
R. 51, Ex. B (Pl. Ex. 17).

supervisors' orders and that an employee's refusal to perform a job can hinder operations. Yonover asked Mr. McClendon what he would do if a warehouse employee refused his request to load a truck until he talked to a lawyer; Mr. McClendon answered (argumentatively and loudly, reported Yonover) that the employee should question his orders if asked to do something that was unsafe. Yonover then explained that Mendenhall had simply asked Mr. McClendon to respond to a routine memo. At that point, Mr. McClendon became louder, according to Yonover, and stated that Mendenhall had no judgment and that he would not do anything that Mendenhall asked him to do without first "checking it out." In his affidavit, Yonover described what next transpired:

I then attempted to speak, but McClendon interrupted me. McClendon, once again, raised his right to seek outside consultation before doing anything. I told McClendon that it was my turn to speak and that McClendon could speak when I was finished. McClendon answered by stating that he could talk when he wanted and that he was going to talk at that time. I told McClendon that I was not going to engage in a shouting match. Because of McClendon's grossly insubordinate conduct during the meeting, I terminated McClendon on September 23, 1994.

R. 51, Ex. B para. 7. Yonover's brief letter to Mr. McClendon, dated September 23, 1994, formalized the termination:

As a result of a very unpleasant meeting with you today your employment with Indiana Sugars has been terminated immediately.

R. 66, Ex. B (Pl. Ex. 34).

## B. The District Court's Determination

On February 9, 1996, the district court granted ISI's motion for summary judgment concerning each of Mr. McClendon's claims on the ground that the undisputed evidence showed that ISI did not discriminate against Mr. McClendon on account of his race. Turning first to Mr. McClendon's claim of harassment, the court considered the facts underlying the searches of Mr. McClendon's truck and garage. It recognized the undisputed evidence that ISI had experienced problems with theft of sugar from its inventory; that it had engaged in random searches of the vehicles of both white and black employees; and that it had conducted each search of McClendon's property only after receiving tips that McClendon had stolen sugar in his garage and truck. The court concluded that Mr. McClendon offered no evidence that the searches were motivated by a racial animus. The district court also found that Mr. McClendon's evidence of racial epithets did not rise to the level of an environment so abusive that it altered the terms and conditions of McClendon's employment. Noting that Mr. McClendon had advanced at ISI from janitor to warehouse manager, the court found that there was no evidence that the racial slurs discouraged employees from remaining on the job or kept them from advancing in their careers. It thus granted ISI summary judgment on Mr. McClendon's abusive environment claim.

The court specifically found that Mr. McClendon was unable to prove that he was the victim of intentional discrimination. The court's review of Mr. McClendon's deposition testimony verified that Mendenhall and Yonover, the decisionmakers involved in this case, never mentioned McClendon's race, EEOC charges or lawsuit; neither did they use racial slurs or epithets. The court also determined that Mr. McClendon could not succeed under the indirect method of proof derived from the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), and its progeny. In each of the plaintiff's claims—denial of promotions, wage increases, overtime—the court found that undisputed evidence showed that ISI's non-discriminatory, non-retaliatory reasons or motives for its actions were valid and not pretextual. None of these determinations has been appealed.

The court then considered Mr. McClendon's claim that the decision to fire him on September 23, 1994, was motivated by discrimination and retaliation for his having filed this suit against ISI on September 20,

1994.[3] The court noted that, although the timing of the two events was quite close, temporal proximity alone was not proof of a causal connection between the filing of the complaint and Mr. McClendon's termination. After examining ISI's proffered legitimate reason for firing Mr. McClendon at the September 23 meeting, namely Mr. McClendon's insubordination, the court turned to Mr. McClendon's reasons for claiming that Yonover's stated reason was a pretext. It noted that the plaintiff's perceptions of his own conduct were not sufficient to place in doubt Yonover's perception of that same conduct. It also declined to admit as evidence an Indiana agency decision finding that Mr. McClendon was not rude or insubordinate and granting Mr. McClendon unemployment compensation; the court refused to consider the document on the ground that it was not a properly authenticated copy. The court concluded that Mr. McClendon had offered no evidence to place Yonover's motives in doubt and therefore that ISI was entitled to summary judgment on Mr. McClendon's claim of a retaliatory termination.

## II

### DISCUSSION

#### A.

■ A summary judgment decision by a district court is given plenary review on appeal. We examine the entire record and controlling law under the same standard employed by the district court. *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 539–40 (7th Cir.1996). Rule 56 of the Federal Rules of Civil Procedure establishes the standard:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

■ At the outset of our analysis, we pause to emphasize that we must decide this case on the record that the parties have made in the district court and that they have brought to us. The district court made note of the "Rubik's Cube" quality of this record and of the difficulty that the court encountered in deciding the case on the basis of such a truncated and disorganized record. The situation that confronts us is no better. An appellant seeking review of his case has the burden of providing to a court a record that is sufficient to permit meaningful review. *LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir.1995); *see* Fed.R.App.P. 10(b)(2). Evidence that was not proffered to the district court in accordance with its local rules is not part of the appellate record; it has no place in an appellate brief. *See Henn v. National Geographic Soc'y*, 819 F.2d 824, 831 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

■ As the party moving for summary judgment, ISI has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Then Mr. McClendon bears the burden of establishing that summary judgment is inappropriate because there is a genuine issue with regard to retaliatory termination. To satisfy this burden, he must come forward

---

**3.** In his deposition, Mr. McClendon explained his claim that he was retaliated against for filing a lawsuit:

> A. Well, I had been there 13 years, and that 13 years should have counted for something. I had never been disciplined one time in 13 years. I did what I was asked and sometimes above and beyond the call of duty. I helped everyone I could.
>
> And as you compare my work record to [coworker] Mr. Moreland, Mr. Moreland can go around and call people niggers and coons and all this and never be written up or disciplined, but as soon as Indiana Sugars receives a lawsuit document from me I'm terminated two days after.
>
> Q. Other than what you've mentioned, do you have any other facts to support your claim that you were retaliated against for filing a lawsuit?
>
> A. No, ma'am.

R. 66, Ex. C at 834.

with "specific facts showing that there is a genuine issue for trial" by referring to the record evidence on file. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 978–79 (7th Cir.1996). If the record before us "could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), Mr. McClendon has failed to demonstrate a genuine issue of material fact, and ISI is entitled to judgment as a matter of law. In making this assessment, we appraise all the evidence and draw all legitimate inferences from that evidence in the light most favorable to Mr. McClendon, the party opposing the summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Rabinovitz v. Pena,* 89 F.3d 482, 486 (7th Cir.1996). We may affirm the judgment of the district court on any sufficient basis that is supported by the record. *Alexander v. Rush North Shore Med. Ctr.,* 101 F.3d 487, 490 (7th Cir.1996) (citing *Burda v. M. Ecker Co.,* 2 F.3d 769, 773 (7th Cir.1993)).

### B.

Mr. McClendon submits that he was terminated in retaliation for filing a discrimination lawsuit against ISI. Under Title VII, it is unlawful for an employer to discharge or otherwise to discriminate against an employee because that employee has brought a charge under Title VII. *Pasqua v. Metropolitan Life Ins. Co.,* 101 F.3d 514, 517 (7th Cir.1996); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992); *see* 42 U.S.C. § 2000e–3(a).[4] In the context of this retaliation allegation, Mr. McClendon does not claim there was direct discrimination; in fact, his deposition testimony establishes that his superiors at ISI, Mendenhall and Yonover (the company decisionmakers), never mentioned Mr. McClendon's race or the EEOC charges and lawsuit he brought against the company. Mr. McClendon instead relies on circumstantial evidence of discriminatory motive for the firing.

There are three showings that a plaintiff must make in order to establish, through circumstantial evidence, a Title VII prima facie case of retaliation: "(1) [H]e engaged in statutorily protected expression; (2) he suffered an adverse action by the employer; and (3) there was a causal link between the protected expression and the adverse action." *Johnson v. City of Fort Wayne,* 91 F.3d 922, 938–39 (7th Cir.1996) (citing cases); *accord Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195 (7th Cir.1994). The parties do not dispute that Mr. McClendon engaged in protected activity when he filed the EEOC complaints and this lawsuit. ISI in fact expressly concedes that Mr. McClendon reasonably believed that, in pursuing those claims, he was challenging conduct that violates Title VII. In addition, there is no disagreement that he subsequently suffered an adverse employment action, termination, only two days after ISI was served with Mr. McClendon's complaint in the discrimination case. The disagreement before us focuses on the third element, the causal link.

In the district court's view, "[w]hile the timing of the two events indeed raises eyebrows, timing alone does not prove a causal connection between the two events." R. 84 at 11–12. Mr. McClendon, on the other hand, submits that the very short time period between the filing of his complaint and his discharge by ISI clearly establishes the necessary causal link. We agree that, under this circuit's established case law, such a closely related sequence of events is sufficient to present a prima facie case. "Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir.1994); *accord Hunt–Golliday v.*

---

4. Section 2000e of Title VII, the provision concerning equal employment opportunities, defines unlawful employment practices. Under § 2000e–3, it is unlawful "for an employer to discriminate against any of his employees … because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

*Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014–15 (7th Cir.1997). A close temporal connection between the two events "is generally enough to satisfy the third element of the prima facie test." *Rabinovitz*, 89 F.3d at 489. However, "as the temporal distance between [the claimant's] protected expression and the adverse action increase[s], it is less likely that there is a causal link between the two events." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir.1996); *accord Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995) ("[T]he substantial time lapse between the two events is counter-evidence of any causal connection."). We have found the causal nexus sufficiently demonstrated when the time period between the filing of a complaint and the adverse action was one day [5] or one week.[6] Similarly, in this case we must conclude that the sequence of events over the 2–3 day period between Mr. McClendon's filing of his complaint and his termination has established a prima facie case of retaliation.

5. *See Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir.1991).

6. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314–15 (7th Cir.1989).

7. In the past we have agreed with assessments by district courts that insubordination can be a valid non-discriminatory justification for discharge. *See Ashkin v. Time Warner Cable Corp.*, 52 F.3d 140, 145 (7th Cir.1995) (upholding findings that dispute between plaintiff and his superior arose out of personality clash between two aggressive individuals and did not involve harassment); *cf. Stringel v. Methodist Hosp.*, 89 F.3d 415, 418 (7th Cir.1996) (accepting district court's ruling that insubordination was a legitimate reason for discharge).

8. In his reply brief, Mr. McClendon also refers to part of the exchange between himself and Yonover at the September 23 meeting that resulted in his termination. We cannot consider arguments made for the first time in the reply brief. 7th Cir.R. 28(f); *Parrillo v. Commercial Union Ins. Co.*, 85 F.3d 1245, 1250 (7th Cir.1996); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 n. 5 (7th Cir.1994). In any event, a portion of the meeting described in the reply brief was not made part of the original record before the district court. When a reply brief contains factual evidence that was not part of the original record certified by the district court or part of a supplemental record filed with this court pursuant to a proper motion under

ISI responds to Mr. McClendon's prima facie case by articulating a legitimate, non-discriminatory reason for the discharge: Mr. McClendon's insubordination. In his affidavit, Yonover stated that insubordination always had been a ground for discharge at ISI during Mr. McClendon's term of employment there, and that Mr. McClendon's grossly insubordinate conduct during the September 23, 1994 meeting was the reason for his termination.[7] Once the employer makes this showing, the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that his actual reason was discriminatory or retaliatory. *Alexander*, 40 F.3d at 195; *Dey*, 28 F.3d at 1457.

The only evidence relied upon by Mr. McClendon [8] to prove that ISI's proffered reason for his discharge was a mere pretext for retaliation was the decision of the Administrative Law Judge ("ALJ") of the Indiana Department of Workforce Development ("IDWD").[9] The district court declined

Rule 10 of the Federal Rules of Appellate Procedure, neither that evidence nor the arguments relating to it need be considered by this court. *See Ashkin*, 52 F.3d at 145 n. 10. In any event, the material quoted by Mr. McClendon in his reply brief would not create a genuine issue of triable fact.

9. The district court described the document as one that "purports to be the Indiana Unemployment Insurance Appeals Review Board's finding that McClendon was not rude or insubordinate during the meeting." R. 84 at 12. Although it is not a matter that necessarily controls the basis of our decision, we note that the ruling contained in the record is actually an ALJ determination from the IDWD. The record does not contain a Review Board decision.

We note that at oral argument counsel for Mr. McClendon disavowed any contention that the Indiana proceeding had a preclusive effect on this action. We note in passing that the strictures of *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3224–25, 92 L.Ed.2d 635 (1986), would prevent the application of issue preclusion to the Title VII claim. Issue preclusion would also be inappropriate with respect to the § 1981 claim, *see Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 626–27 (7th Cir.1996); *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300–01 (7th Cir.1992) (per curiam), because, as explained in the text that follows, the issues and burdens of proof are different in each proceeding.

to consider that evidence on the ground that the copy was not properly authenticated.

Mr. McClendon contends that the document was indeed properly authenticated and admissible under Rules 803(8), 902(1) and 1003 of the Federal Rules of Evidence and that the ALJ's findings show that ISI's articulated reason for Mr. McClendon's termination, his insubordination, was either factually unfounded or insufficient to motivate Mr. McClendon's discharge. He relies on *Collier v. Budd Co.*, 66 F.3d 886 (7th Cir.1995), in which we explained that an employee responding to his employer's proffered non-discriminatory reasons for his discharge has the burden of proving that those reasons are not credible by showing that they either (1) had no basis in fact, (2) did not actually motivate his discharge, or (3) were insufficient to motivate the discharge. *Id.* at 892. According to Mr. McClendon, the ALJ's ruling was relevant as a credible finding that Mr. McClendon's conduct was not rude or insubordinate.

We need not decide whether the district court was correct in its conclusion that the copy of the state ALJ's decision was not authenticated properly. A more fundamental reason precludes permitting this state determination to support the assertion that the employer's proffered reason for the discharge was a pretext. Not only was the ultimate issue decided in the Indiana proceeding different from that presented in this case, but the allocation of burden of proof with respect to the underlying facts in the state case was significantly different.

 In the Indiana administrative proceeding, the ultimate issue was the eligibility of the claimant, Mr. McClendon, for unemployment compensation. The IDWD's initial determination was that Mr. McClendon was discharged for just cause. After a hearing, the ALJ reversed that decision and determined that ISI had failed to establish that Mr. McClendon was rude or insubordinate at the two meetings. On the basis of that record, made when the burden of proof was on the company, the ALJ concluded that Mr. McClendon's discharge was not for just cause and that he was entitled to unemployment benefits. It is important to note that the issue in an Indiana unemployment compensation proceeding is whether an employee was terminated for just cause and thus is ineligible for unemployment benefits. *See Gibson v. Review Bd. of Ind. Dep't of Workforce Dev.*, 671 N.E.2d 933, 934 (Ind.App.Ct. 1996). Under Indiana unemployment compensation law, it is, moreover, the employer who must make the prima facie showing that the employee was discharged for employment-related misconduct within the meaning of § 22–4–15–1 of the Indiana Code. The employer has the burden of showing that he had "just cause" for the termination because "the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule." *Butler v. Review Bd. of Indiana Dep't of Employment & Training Servs.*, 633 N.E.2d 310, 312 (Ind.App.Ct.1994).

By contrast, the issue in this retaliatory discharge determination is whether the employee was terminated in retaliation for engaging in some form of protected expression (e.g., the filing of a lawsuit).[10] The burden of proof was distinctly different in each proceeding.[11] Once the employer has put forth a non-discriminatory reason for the discharge in reply to the employee's prima facie case, it is the employee's burden to demonstrate that this non-discriminatory reason is pretextual.

**10.** *See Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996) (presenting issue whether there is a causal relationship between an employee's engaging in some form of protected expression (*e.g.*, the filing of a lawsuit) and an employer's adverse action against the employee (*e.g.*, termination)).

**11.** We note that, after the termination of Mr. McClendon's unemployment compensation proceeding, the Indiana legislature amended the Indiana Employment Security Act to provide that the administrative award of unemployment compensation ought not be admitted for any other purpose in any state or federal court. Ind.Code § 22–4–17–12(h). We need not decide here whether that statute is retroactive in its application or whether the determination of the Indiana legislature would be binding in a federal court. We simply note in passing that the action of the legislature serves to underline the uniqueness of such proceedings, a uniqueness that counsels against the use of those proceedings even without reference to the new statutory limitation.

Here, the employer came forward with evidence of Mr. McClendon's conduct during discussions with his superiors about the goals statement. Although there is some disagreement about the details of that encounter, the record does not place in doubt ISI's contention that it made a good-faith estimation that Mr. McClendon had been disrespectful. It is important to recall that it is not relevant whether Mr. McClendon actually was insubordinate. All that is relevant is whether his employer was justified in coming to that conclusion.[12] Consequently, the estimation of a third party, here the state ALJ, is not relevant to that determination. What would be relevant, although it was not forthcoming, is evidence that the employer's estimation of that conduct was not held in good faith and was therefore a pretext for a discriminatory motive. Although Mr. McClendon's own mere assertions that his conduct was not insubordinate are "insufficient to raise a question of fact about an employer's honest assessment of inadequate performance" or insubordination, *see Dey,* 28 F.3d at 1460, such evidence in combination with other material from the record (*e.g.,* the testimony of other witnesses at the September meetings, past performance evaluations that might have commented on his cooperation or company spirit) might have indicated that ISI's actual reasons for his firing were retaliatory. *Id.*

The record before us raises no genuine issue of triable fact as to whether Mr. McClendon's superiors believed in good faith that he was insubordinate. We are bound by the record made by the parties and, on that record, we cannot say that the district court committed error in granting summary judgment.

## Conclusion

For the reasons stated above, we affirm the judgment of the district court granting ISI's motion for summary judgment on Mr. McClendon's claim of retaliatory termination.

AFFIRMED.

---

**12.** *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995) (stating that, when employer offers reasons for the challenged actions, "the issue was not the adequacy in fact of [plaintiff's] performance[, but rather] the honesty of the company's belief that it was inadequate"); *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1460 (7th Cir.1994) (noting that "whether the employer honestly based its employment decision on performance-related considerations ... is the focus of our inquiry").