124 F.3d 203
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gregory A. CLAY, Plaintiff-Appellant,
v.
INTERSTATE NATIONAL CORPORATION, Defendant-Appellee.
 No. 95-3430.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 25, 1997.*
Decided Aug. 7, 1997.
 
 Before POSNER, Chief Judge, EASTERBROOK, Circuit Judge, and MANION, Circuit Judge.
 
 ORDER
 
 1
 Gregory Clay sued his former employer, Interstate National Corporation, alleging employment discrimination and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court granted summary judgment to Interstate. Clay appeals, and we affirm.
 
 I.
 
 2
 We summarize the relevant portion of the facts, read in the light most favorable to Clay. In August 1987 Interstate hired Clay, who is African-American, as a Cash and Investment Supervisor in its accounting department, a position that required him to manage various financial transactions and compile monthly investment asset data. His supervisor, Linda Trandel, who is white, gave him a favorable performance appraisal in August 1988, but noted that he needed to develop his supervisory skills and his knowledge of the "SMS" computer system that the company used to generate investment reports. In the following months, under frequent prodding from Trandel, Clay only gradually improved his skills with the SMS system and was criticized for several irregularities in financial transactions for which he was responsible. Trandel's fairly negative September 1989 annual performance appraisal indicated Clay "needs improvement" and identified several specific performance deficiencies. It also set as a goal that Clay would soon take on Trandel's monthly accounts receivable reconciliations, a task he had delayed learning.
 
 
 3
 On February 1, 1990, Clay was placed on probation for his persistent performance deficiencies; on March 16, the probation was lifted because he had completed the reconciliations, albeit late and with errors. Clay's work performance did not improve, however, and his July 1990 performance appraisal cited the need for improvement in most of the same areas as had the last appraisal; he was again placed on probation. He objected in writing on the notice of probation that "I can prove conclusively that what is being alleged is not accurate." On July 30 Interstate received notice from the Illinois Department of Human Rights that Clay had filed a charge of race discrimination. Interstate then extended Clay's probationary period by two weeks to investigate the charge. Clay was discharged on August 16, 1990, and not replaced.
 
 
 4
 Clay contends that while he was employed by Interstate, he experienced several instances of racial animus and discrimination. On July 27, 1989, for example, Trandel criticized Clay for not promptly performing a job function: providing blank drafts (apparently forms of some sort) to the word processing department. Clay concludes that the criticism must have been motivated by race because he was not given a chance to state his position on the issue and because he was not treated on an equal basis with the white employees who were involved. Another incident, in September 1989, involved Clay's refusal to be photographed with other employees in the department, most of whom were not black, dressed up as "tough guy mob type bill collectors," wearing black fedoras and sunglasses, because he believed the theme connoted a racially denigrating "Step 'n' Fetchit" routine. Another black employee also refused to participate, saying she did not like to be photographed. Clay claims Trandel angrily told him "something to the effect that you people are causing problems." (Clay Dep. at 217.) He believes "you people," which referred to him and the other black employee, to have been a racial slur because of Trandel's emphasis and inflection.
 
 
 5
 In November 1989 Clay complained in writing to Human Resources that he had overheard a coworker shout "the black baby killers won all the elections." This was a few days after the election of two black mayors and a black governor. The company investigated and says that the coworker explained he had said it for "shock value" because he was pro-choice and pleased by the recent election results. The coworker was given a verbal warning for making an inappropriate remark, and Clay was informed of the result. The final incident that Clay relates involved a high school mentoring program created by Interstate which initially included only one black employee. After twelve of the black employees, including Clay, met with Interstate's general counsel to complain about the paucity of black mentors, Clay and several other black employees participated in the program.
 
 II.
 
 6
 First, a preliminary matter: Interstate has moved either to dismiss the appeal or to strike Clay's appendix and the portions of his brief that rely on it because, it says, of the 95 exhibits therein only 20 were before the district court. Clay claims Federal Rule of Appellate Procedure 10(e) gives him the right to submit new materials, ignoring the rule's purpose, which is merely to permit amendment of the record where it does not accurately reflect what occurred in the district court. Rule 10(a) is explicit that the record on appeal consists only of materials filed in the district court. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 795 (7th Cir.1997); Henn v. National Geographic Soc'y, 819 F.2d 824, 831 (7th Cir.1987). Clay, who was represented by counsel in the district court and now proceeds pro se, improperly attempts to expand the record via his appendix on appeal. The district court can not be faulted for failing to consider that which was never submitted. We grant Interstate's motion to strike the extraneous materials and confine our review to the record as it was before the district court.
 
 
 7
 Title VII establishes that it is unlawful for an employer to discriminate on the basis of race in hiring, firing, or setting the terms and conditions of employment. 42 U.S.C. § 2000e-2(a). The basic question in reviewing the grant of summary judgment on Clay's claims of racial discrimination is whether there is a triable issue of fact that race played a role in Interstate's adverse employment actions against him. The district court assumed for the sake of argument that he had established a prima facie case of discrimination. We agree with the district court that Interstate articulated legitimate nonracial reasons for its decisions, whereupon it was Clay's burden to show that these reasons were pretextual, "[which] means a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995). In employment discrimination cases, the court does not question the wisdom of the employer's decision, only whether it was motivated by forbidden factors. See Wolf v. Buss (America) Inc., 77 F.3d 914, 919-20 (7th Cir.) (ADEA), cert. denied, 117 S.Ct. 175 (1996).
 
 
 8
 The district court analyzed each of the instances of discrimination alleged by Clay separately and collectively for the possibility of nexus with the adverse employment actions taken against him, and found them wanting. The court noted the lack of evidence in the record to support Clay's conclusory assertion that Trandel's reprimand after the July 1989 "blank drafts" incident was racially motivated. Clay does not contend that he performed his job function satisfactorily and does not identify even one similarly situated white employee whose performance was deficient in the same incident. Conspicuously, his allegation that several white employees were "involved" in the incident also falls short of claiming that anyone else was culpable for it.
 
 
 9
 The group photograph incident does not supply evidence of discrimination; all employees were expected to participate regardless of race. Although Trandel's subsequent "you people" remark is questionable, it was merely an isolated remark in a context independent of any adverse employment action and which, in light of the substantial evidence of Clay's inadequate performance, could not persuade a rational factfinder to believe that Trandel had discriminated against him on the basis of race. This is true regardless of whether Clay relies on the remark as direct or circumstantial evidence of discrimination, compare Futrell v. J.I. Case, 38 F.3d 342,. 347 (7th Cir.1994), with McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir.1991).
 
 
 10
 Similarly, the "black baby killers" comment by a coworker, while certainly insensitive, lacks the requisite nexus, temporal or otherwise, with any adverse employment action taken by Interstate. The speaker was not Clay's superior but a coworker, the comment was not directed at Clay, and it does not demonstrate any corporate tolerance of racial harassment; on the contrary, Interstate promptly investigated the incident and reprimanded the individual. Clay only conclusorily alleges that Interstate punished him for making the complaint. Likewise, the high school mentoring program incident does not support a plausible inference of discrimination.
 
 
 11
 Clay's retaliatory discharge claim fares no better, again for lack of evidence of pretext. Clay was already on probation and well on his way to discharge when he filed his administrative discrimination claim. He conceded below that during this second probationary period he "again failed" to perform several of the functions for which he had been criticized in the past. That his discharge followed shortly after his employer received notice of his charge is not enough to establish a prima facie case for retaliatory discharge and is far from sufficient to carry Clay's ultimate burden that the actual reason was retaliation. See McClendon, 108 F.3d at 796-99. Interstate had thoroughly documented Clay's performance problems long before the discharge.
 
 
 12
 As mentioned earlier, the court's inquiry is not whether Interstate's employment actions were justified or even rational. It is solely whether they were motivated in whole or part by forbidden discrimination. By failing to rebut Interstate's substantial evidence of his deficient performance, and for lack of relevant evidence of racial discrimination, Clay presented no genuine issue of material fact. Thus the district court properly granted summary judgment to Interstate.
 
 
 13
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)