**Valerie J. VANCE, Plaintiff,**

v.

**QUALEX, INC., Defendant.**

**No. 3:99CV0333 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 29, 2000.

Georgia C Luks–McFarland, South Bend, IN, for Valerie J Vance, plaintiff.

Christopher A Nichols, May Oberfell and Lorber, South Bend, IN, William E Hester, III, Bethany L Brantley, The Kullman Firm, New Orleans, LA, for Qualex, Inc., defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The complaint in this case was filed on behalf of Plaintiff, Valerie J. Vance (Vance), against Defendant employer, Qualex, Inc. (Qualex), alleging both gender discrimination and retaliation. This is *not* a sexual harassment case. It is a failure to receive a promotion case. A substantial record has been developed, including most recently, the filing of a Motion for Summary Judgment by Qualex. The parties have fully briefed the issues and this Court heard oral argument on March 31, 2000. The motion is now ripe for ruling.

## JURISDICTION

The case is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## BACKGROUND[1]

On or before May of 1995, Qualex had a customer service department in the South Bend, Indiana area for a photo processing plant. The service department originally had approximately seven customer service representatives, but in May 1995 that had expanded to twenty representatives, called Customer Service Specialists (CSS's). Of these twenty employees, three were male and seventeen were female. A person named Mary Grace Corpora (Corpora) was the manager of the Call Center. Susan Lichnerowicz was the Human Resources Manager of the South Bend facility and was primarily responsible for employing its staff. She interviewed and hired Vance as a CSS on May 22, 1995. Vance began this job with no prior experience in photo

---

1. For summary judgment purposes, the facts here are related in a manner most favorable to Vance.

finishing. Her prior work experience consisted primarily of clerical and sales positions in retail and wholesale establishments with some other experience as a worker in a factory. She had some computer-related experience but the record indicates it was fairly basic. Vance admits that she did not specialize in any computer related area while in school. However, she points out that basic computer literacy was an integral part of her studies and she felt comfortable using a computer. When employed by Qualex, Vance had completed some college credits, and eventually finished a two-year Associate's degree in July, 1995, and a then a Bachelor's degree in May, 1996.

Vance completed her initial hire training during the summer of 1995, with no major problems. For the year following May, 1995, Vance worked as an Inbound Call Representative, but in May, 1996, she requested to be reassigned from an Inbound Representative to a Callback Representative.[2] This request was granted. She asked for the change because she had apparently had some problems in dealing with customers, especially irate ones as they sometimes upset her, and therefore she felt she could perform better in the Callback position. Vance was evaluated regularly and her 1995–1996 evaluations reflected overall positive effort, growth and competence. Her scores fell at the low end of the "excellent" range.

During 1996, the total number of CSS's expanded to sixty, of which eight were male and fifty-two were female. Due to the expansion a new position was created and a job announcement for a so-called "Night Coordinator" was posted. Five females, including Vance, and one male were interviewed.[3] On September 28, 1996,

Corpora selected the male candidate. Vance disagreed with the choice and expressed her views openly. Her contention was that she was the better qualified person. She complained to her colleagues, however, she did not complain that her failure to receive the promotion was based on gender nor did she file an internal complaint of discrimination.

Shortly after Vance complained to coworkers about her failure to be promoted, Corpora instituted several new procedures at Qualex. She issued a written policy change for tardiness. Due to this change, Vance was written up for excessive tardies allegedly occurring between November, 1996 and February, 1997. Also, Corpora began requiring an unwritten quota from each of the CSS's. Vance was "counseled" for failing to meet the quota. Several months later, Corpora reduced the quota requirement to a written policy change. Vance was the only employee written up and placed on probation for not meeting this newly instituted quota.[4] On July 1, 1997, she was suspended for three days for failing to meet quota. While on suspension, Vance filed her E.E.O.C. complaint alleging gender discrimination. Corpora next changed the evaluation forms and process. In June, 1997, Vance received her first unfavorable evaluation. In July, 1997, a customer complained about Vance's phone demeanor. In August, 1997, a different customer complained about the way Vance handled a matter. In September, 1997 a third customer allegedly complained about Vance. Vance was terminated on September 15, 1997. She filed her retaliation claim with the E.E.O.C. the same day.

---

**2.** Inbound Representatives were the first contact for customer complaints. Whenever something was wrong with a film order, the customer called Qualex and the Inbound Reps. handled those calls. Customers were often angry and difficult to deal with.

**3.** Vance claims Corpora called her away from her work station to ask a few general ques-

tions one day, but that she was never given the chance to formally interview. (Vance Aff. ¶ 8.)

**4.** Various exhibits indicate that other employees failed to meet the arbitrary quota and were not written up or reprimanded. Discussed in detail, *infra*.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998); *Leisen v. City of Shelbyville*, 968 F.Supp. 409 (S.D.Ind.1997), *aff'd* 153 F.3d 805 (7th Cir.1998).

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998), *reh'g denied.* A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994), nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995). This general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793 (7th Cir.1995); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368 (7th Cir.1992); *Tomasello v. Delta Air Lines, Inc.*, 8 F.Supp.2d 1090 (N.D.Ill.1998). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994).

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in her favor. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055 (7th Cir.2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337–38 (7th Cir.1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Wollin v. Gondert*, 192 F.3d 616, 621–22 (7th Cir. 1999); *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir.1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997). Applying the above standard, this Court addresses Qualex's motion.

### DISCUSSION

Qualex asserts summary judgment is proper because Vance has "admitted all facts dispositive in this matter." (Def's Mem. in Support at 13–15.) Elaborate requests for admissions were served on the plaintiff by the defendant on September 29, 1999 under Rule 36, Federal Rules of Civil Procedure. There were supplemental responses filed on November 26, 1999, which are alleged to be untimely, but even if they are not untimely, they are not of significant help to this plaintiff. This court does not deem it necessary to bottom

its decision here on the hard edges of Rule 36.[5]

### Discriminatory Failure to Promote

Vance can avert summary judgment for Qualex either by putting in enough evidence of discriminatory motivation to create a triable issue, the "direct method," or by establishing a *prima facie* case under the "burden shifting formula". Vance attempts to establish evidence that the failure to promote her was gender discrimination under both methods.

■ Vance first argues that she has direct evidence of discrimination. "Direct evidence" employment discrimination cases are those in which evidence would serve to prove unlawful discrimination without any inferences or presumptions. Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq.* The most obvious and compelling example would be a remark to the effect that "I won't [promote] you because you're a woman," or "I'm firing you because you're not a Christian." *See Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir.1996); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996). But the evidence need not be this obvious to qualify as direct evidence.

In support of her claim of discrimination for failure to promote because of gender, Vance points to a comment that Corpora allegedly made to her after Corpora found out that Vance was complaining to co-employees about not receiving the Night Coordinator position. Vance claims Corpora told her that she "thought having a man around might resolve problems" such as internal complaining among female workers. (Vance Aff. ¶ 11.) Qualex argues that Corpora never made such a statement and that even if she did, it is merely a "stray remark" and is not sufficient to support Vance's claim of gender discrimination. (Def's Mem. in Support at 17–19.) Defendant's reliance on *O'Connor v. DePaul Univ.*, 123 F.3d 665 (7th Cir. 1997), *reh'g denied*, and *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3rd Cir.1999)[6], is misplaced however. Those cases involved stray remarks that were made long before the challenged adverse employment action and those courts, therefore, found that the remarks were totally unrelated to the adverse action. Such is not the case with Vance. Here, the remark was allegedly made within a few weeks after Vance was denied the promotion and was supposedly made to partially justify Corpora's choice. Remarks and other evidence that reflect a propensity by the decision maker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality. *See, e.g., Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990); *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1164–65 & nn. 2–3 (7th Cir. 1994). Vance must, however, present enough evidence of discriminatory motivation to create a triable issue. This Court is not convinced that the alleged remark at issue here is sufficient. Vance has relied solely on one alleged statement to support her direct evidence gender discrimination theory. The record here shows that both of Vance's immediate supervisors were female, and that during the time Vance was employed several other females were promoted. At most, Vance can argue that some personal animus toward her prevented her promotion, however, she cannot convince this Court that the decision was based on her gender. *See e.g., Larimer*, 137 F.3d 497 (no direct evidence of sex discrimination where store manager explained to plaintiff she was not promoted because she was not "perky" and did not have a "bounce" in her step). *Compare, Emmel*, 95 F.3d 627, 631 (sufficient direct

---

5. Defendant also points out that Vance's filings are not in accord with Rule 56 and Local Rule 7.1. The Court will not award summary judgment to Defendant based solely on these procedural errors, however, the Court takes note of them and admonishes plaintiff's attorney to adhere to the confines of the Rules.

6. The Court notes that Defendant mistakenly cites this case as *Colonna*, 191 F.3d at 358.

evidence where supervisor told plaintiff she was not promoted because "as we all know, they wanted men in these positions," and where other statements from top officers at Coca–Cola that suggested that indeed "they" believed women had no role in upper management); *see also, Venters v. City of Delphi,* 123 F.3d 956, 973–74 (7th Cir.1997). The Court finds that there is no direct evidence of gender discrimination here presented. This does not defeat Vance's claim, however. She may still proceed under the "burden shifting" formula set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under *McDonnell Douglas,* Vance must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, Qualex has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If Qualex does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to Vance to show that the given reason was just a pretext for discrimination. *Id.; Fisher v. Wayne Dalton Corp.,* 139 F.3d 1137 (7th Cir.1998). To meet her burden of proving pretext, Vance must prove both that the reason given for the adverse action by the employer was false, and that discrimination was the real reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Bahl v. Royal Indem. Co.,* 115 F.3d 1283 (7th Cir.1997).

■ In order to establish a *prima facie* case, Vance must demonstrate by a preponderance of the evidence that: (1) she is a member of a protected group; (2) she applied for and was qualified for the position; (3) she was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the position, or other evidence from which one can infer that the plaintiff was denied promotion for a discriminatory reason. *See Leffel v. Valley Fin. Servs.,* 113 F.3d 787, 793 (7th Cir.1997) (based on the Supreme Court's opinion in *O'Connor v. Consolidated Coin*

*Caterers Corp.,* 517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)), *cert. denied,* 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318; *Hasham v. California State Bd. of Equalization,* 200 F.3d 1035 (7th Cir.2000). The *prima facie* case analysis cannot be used by rote but must be adapted to fit the varying facts of Title VII discrimination cases. *Flores v. Preferred Tech. Group,* 182 F.3d 512 (7th Cir.1999).

■ Here, the parties do not dispute issues one and three. As for issue two, Qualex contends that Vance was not qualified for the position or at least not as qualified as the male who was chosen. If Vance fails to establish that she was qualified for promotion, then all that would remain of the *prima facie* case would be her membership in a protected group and the promotion of a male employee. *Pafford v. Herman,* 148 F.3d 658 (7th Cir.1998), *cert. denied* 525 U.S. 1020, 119 S.Ct. 548, 142 L.Ed.2d 455. Under those circumstances, the inference that Vance would have been promoted but for her gender would be too weak to allow the factfinder "to speculate on the motive for the [denial of promotion]." *See Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997) (citing *McDonnell Douglas* ). In support of its position that Vance was not qualified, Qualex provides a copy of the job description and copies of the job applications, diplomas, and resumes or other related information for both Vance and the male who was promoted. The job description contained the following requirements:

a. Flexibility

b. Able to work overtime much of the year

c. Thorough understanding of photo finishing

d. Thorough understanding of Customer Service Representatives (C/R)

e. Ability to interface with management in C/R and all other departments

f. Ability to handle confrontations and consultations

g. Excellent P.C. skills (will also be charting and graphing numerous department statistics)

h. Dependability (good absence/tardy record)

i. Ability to handle supervisor calls (inbound & outbound)

Qualex concedes that Vance met requirements a, b, d, h, and i, however, it asserts Vance fell short on c, e, f, and g. Qualex asserts that the main deciding factors were that the male applicant had superior computer skills and could interface with better with management. Vance asserts this is a pretext. In this Court's opinion, a review of both parties' credentials supports the fact that the male had superior computer experience and skill.[7] The evidence also supports that the male candidate had prior and current supervisory responsibility.[8] Additionally, the record shows, and Vance herself admits that she had some difficulty with confrontation. She specifically asked to be switched from an incoming call representative to an outgoing call representative in order to avoid the complaints and confrontation. (Vance Dep. at 46–7; Def's Mem. in Support at 5.) While Qualex may have been mistaken as to the computer experience or management abilities Vance actually possessed, discrimination laws serve only to prevent consideration of forbidden characteristics, such as gender. They are not court-enforced merit selection programs. Pretext will not be shown, for Title VII purposes, even if the reasons for an adverse employment decision were mistaken, ill considered, or foolish, so long as the employer honestly believed those reasons. Basically, to meet her burden here, Vance must present evidence to suggest not that Qualex was mistaken in denying her promotion but that it was lying

in order to cover up the true reason, her gender. *Jordan v. Summers,* 205 F.3d 337 (7th Cir.2000); *Vanasco v. National–Louis University,* 137 F.3d 962 (7th Cir. 1998). *See also, Crim v. Board of Educ. of Cairo School Dist. No. 1,* 147 F.3d 535, 541 (7th Cir.1998). The Court must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist]." 1 Leonard B. Sand, et al., Modern Federal Jury Instructions P 6.01, instr. 6–1 (1997). Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances. The evidence here does not support such an inference. There is simply nothing to support the claim that but for her gender, female, Vance would have been promoted. Second-guessing employer's promotion decision, and assuming role of super-personnel board, are inappropriate actions for court in employment discrimination action. *Larimer,* 137 F.3d 497. Accordingly, summary judgment is proper as to Vance's discriminatory failure to promote claim.

## Retaliation

■ Once it is determined that a *prima facie* case has not been made with regard to the basic claim of gender discrimination, it is harder but not impossible for such a plaintiff to make a claim for retaliation. There are certainly circum-

---

**7.** The promoted male obtained a Bachelor of Arts degree in May, 1985, and a Master of Library Science in December, 1985. On his employment application, he specifically listed work with DOS, Windows, Lexis/Nexis, and with installing and updating software. In comparison, Vance completed an Associate of Applied Science degree in July, 1995, just before she was hired. She completed her Bachelor of Science degree in May, 1996, shortly before she applied for the promotion. Her employment application shows that she

had several basic computer courses in conjunction with her Associate's degree but does not list prior work experience involving specific computer applications or skills.

**8.** His resume shows that he had experience training reference assistants, supervising the "government publications technician," and other similar responsibilities while he worked for the University of Washington Business Administration Library.

stances in which retaliation can be had even in the absence of employment discrimination. Title VII makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment ... because she has opposed any practice made an unlawful employment practice ... or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, Vance must provide evidence that she engaged in a statutorily protected activity, she suffered an adverse employment action, and that there is a causal link between the protected activity and the adverse action. Vance did indeed file an E.E.O.C. complaint which is a protected activity. She also suffered an adverse employment action, she was fired. So far so good for retaliation. However, as is the case for most plaintiffs, establishing a causal link is more difficult. Retaliation, like other discriminatory action, may be established in either of two ways: by direct evidence or by the indirect burden-shifting method of *McDonnell Douglas.* *See, e.g., Sanchez v. Henderson,* 188 F.3d 740, 745–46 (7th Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 1201, 145 L.Ed.2d 1104 (2000); *Knox v. Indiana,* 93 F.3d 1327, 1333–34 (7th Cir.1996); *Helland v. South Bend Community Sch. Corp.,* 93 F.3d 327, 329 (7th Cir.1996), *cert. denied* 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of retaliation may be drawn.

In order to meet the causal link requirement, Vance must demonstrate that the Qualex "would not have taken the adverse action 'but for' the protected expression." *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 483 (7th Cir.1996) (citing *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir.1985)). One way she can establish this link is "by showing that there was a suspiciously short period of time between" her complaint and the adverse employment action. *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1039 (7th Cir.1998). However, as the time period between the two events increases, the hint of a causal link decreases. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir.1998) (citing *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796–97 (7th Cir.1997)). Here, Vance first complained to co-workers in late September or early October of 1996, when she was not promoted. She did not file an E.E.O.C. charge until July 1, 1997. She was terminated on September 15, 1997. The Court need not dwell on this time frame, however, because Qualex asserts that it would have fired Vance whether or not she had complained about the failure to promote her. Because Qualex has provided a non-discriminatory reason for Vance's termination, the Court may move directly to the issue of pretext. *Abioye v. Sundstrand Corp.,* 164 F.3d 364, 368 (7th Cir.1998), *cert. denied* 527 U.S. 1003, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999). *See also, E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149–50 (7th Cir.1996).

To support an inference of pretext requires some showing that "(1) the defendant's explanation has no basis in fact, or (2) the explanation was not the 'real reason', or (3) ... the reason stated was insufficient to warrant the [termination]." *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir.1996) (citations omitted). The pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995), *reh'g denied.* Therefore, Vance can establish pretext with evidence suggesting that retaliation or discrimination was the most likely motive for the termination. *Johnson v. Sullivan,* 945 F.2d 976, 980 n. 5 (7th Cir.1991) (citations omitted). Qualex claims Vance was terminated because she received three unrelated customer complaints about her demeanor.[9] (See Def's

---

9. It is important to note that Qualex specifi-     cally concedes Vance's tardiness and her al-

Mem in Support at 28–29; Lichnerowicz Dep. at 28–29; Corpora Aff. ¶ 4–5.) Vance insists that she was performing well enough and that other employees who had similar problems were not terminated. (Vance Aff. ¶ 8–9.) Defendant correctly points out that, "[a]n employee's selfserving statements about [her] ability ... are insufficient to contradict an employer's negative assessment of that ability." *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir.1998), *cert. denied* —— U.S. ——, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992); *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir.1994). Self-serving statements do not "shed any light on whether the employer honestly based its employment decision on performance-related considerations". *Dey*, 28 F.3d at 1460; *Gustovich*, 972 F.2d at 848. However, Vance has also provided statements from co-employees to support her claim that she was treated differently. (See Heiman Aff. ¶ 6; Woodward Aff. ¶ 5, 6, 8.) Furthermore, additional evidence can be found if the plaintiff presents evidence demonstrating a pattern of criticism and animosity by supervisors following the protected speech. *See Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir.1997). Such appears to be the case here. After Vance complained that she was not promoted a number of things occurred which would permit a trier of fact to infer that Qualex's reason for terminating Vance is a pretext. Beginning in November, 1996, Vance's supervisor began writing her up for being "tardy." Several co-workers state that Corpora began nitpicking at Vance and that they never heard Vance speak rudely to customers. (Rigdon Aff. ¶ 8; Woodward Aff. ¶ 12; Heimann Aff. ¶ 4.) The male who was promoted wrote a memo to Corpora stating that he "finally nailed her [Vance] for pro-

---

leged failure to meet "quota" were not used as a reason to terminate her. According to Qualex, Vance was terminated because a customer complained about her in July. She was

---

ductivity." (Vance Aff., Ex. 8.) A quota system was instituted and Vance was reprimanded for failure to meet her quota, yet other employees were not similarly reprimanded for failure to meet their quotas. (See Heimann Aff. ¶ 6; Woodward Aff. ¶ 5, 6.) *Compare Lederer v. Argonaut Ins. Co.*, NO. 98 CV 3251, 2000 WL 126933, (N.D.Ill. Jan. 28, 2000) (While their final departures from the company came five months after their first complaints, plaintiffs pointed to adverse action which continued until immediately before they tendered their resignations. Based on the temporal relationship between those numerous actions and plaintiffs' complaints, a jury could reasonably concluded that defendant retaliated against plaintiffs because they had opposed an unlawful employment practice); *Farrow v. Humana Health Plan, Inc.*, 69 F.Supp.2d 1050 (N.D.Ill.1999) (employer could not properly enforce a policy as to one employee while blindly ignoring similar infractions by another. Selective enforcement of facially neutral regulations is, if anything, more insidious than outright discriminatory regulations because such subsurface discrimination is more difficult to detect).

## CONCLUSION

For purposes of summary judgment, if the evidence viewed in the light most favorable to the plaintiff would permit a rational trier of fact to infer that the proffered reason is a lie, the plaintiff has created a triable issue of pretext. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994); *see also Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518 (7th Cir. 1994); *Robinson*, 23 F.3d 1159, 1164; *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 660 (7th Cir.1991) (en banc). At this stage in the litigation, Vance has made a sufficient showing to survive summary judgment on her retaliation claim.

---

"counseled" by her supervisor. A different customer complained in August and a third customer complained in September.

For the preceding reasons, Defendant's Motion for summary judgment is **GRANTED** IN PART and **DENIED** IN PART. Vance's claim for discriminatory failure to promote is dismissed. Her retaliation claim remains.

IT IS SO ORDERED.