**Peter S. HELLAND, Plaintiff–Appellant,**

v.

**SOUTH BEND COMMUNITY SCHOOL CORPORATION, Defendant–Appellee.**

**No. 96–1079.**

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1996.

Decided Aug. 15, 1996.

Robert J. Palmer, Thomas Arkell, Law Student, May, Oberfell & Lorber, South Bend, IN, for plaintiff–appellant.

John B. Drummy, Thomas E. Wheeler, II, Kightlinger & Gray, Indianapolis, IN, Thomas J. Brunner, Jr., Kari A. Gallagher, Baker & Daniels, South Bend, IN, for defendant–appellee.

Before BAUER, ROVNER, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

The South Bend Community School Corporation removed Peter Helland from its list of substitute teachers because he failed to follow lesson plans, failed to control his students, and improperly interjected religion into his classrooms. Helland believes that the School Corporation unlawfully dismissed him because of his religious beliefs, so he

sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb. The district court granted the School Corporation's motion for summary judgment, and we affirm.

## BACKGROUND

Helland's Christian and Gideon beliefs require that he carry and read the Bible. From May 1979 to June 1980, and again from August 1985 to November 1993, Helland worked as a substitute teacher for the South Bend Community School Corporation. During that time, several principals and teachers for whom he had substituted submitted negative evaluations of Helland's performance and requested that he not return to their schools or classrooms. The evaluations indicated that Helland failed to follow lesson plans left for him by the teachers for whom he substituted and that he failed to maintain control of his classes. One teacher complained that Helland drank a nonalcoholic beer in class, and that the students believed it was alcoholic. Two teachers commented on Helland's lack of understanding of high school students, noting an incident where Helland gave his car keys to a student who had been suspended from school grounds. In addition, several teachers complained that Helland proselytized in his classes by reading the Bible aloud to middle and high school students, distributing Biblical pamphlets, and professing his belief in the Biblical version of creation in a fifth grade science class. After the latter incident, Helland agreed not to give the students an assignment if they agreed not to tell anyone about the discussion.

The School Corporation warned Helland numerous times that his poor performance as a substitute and his improper interjection of religion into the classroom were grounds for removing him from the substitute teacher list. Finally, in November 1993, it notified Helland that it no longer would hire him as a substitute teacher because he did "not follow[ ] lesson plans, [had] problems with classroom management and on some occasions ... interjected ... religious-oriented materials into portions of your classroom presentation."

Helland filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of his removal from the School Corporation's substitute teacher list. 42 U.S.C. § 2000e–5(e)(1). The EEOC declined to bring an action on Helland's behalf. Helland then commenced this lawsuit in federal court, alleging that the School Corporation discriminated against him because of his religion in violation of Title VII, § 1983, and RFRA.

## I.  *Title VII and § 1983 Claims*

The district court granted the School Corporation's motion for summary judgment on Helland's Title VII and § 1983 claims because it concluded that Helland had not responded to the motion with evidence sufficient to allow a factfinder to conclude that the School Corporation dismissed him because of his religion. Helland can prevail on his Title VII and § 1983 claims in one of two ways. He can offer direct proof of discriminatory intent, *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir.1995), or he can rely on the indirect, burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Bruno v. City of Crown Point*, Ind., 950 F.2d 355, 361 (7th Cir.1991), *cert. denied*, 505 U.S. 1207, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992). Under the *McDonnell Douglas* framework, the plaintiff first must establish by a preponderance of the evidence a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the plaintiff. The burden then shifts to the employer to produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for its challenged employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If the employer meets this burden, the plaintiff then must prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs*

*v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

■ Here, Helland had no direct evidence of intentional discrimination, and therefore opted for the second approach. Assuming, as did the district court, that Helland established a prima facie case of religious discrimination, the burden then shifted to the School Corporation to articulate a legitimate non-discriminatory reason for removing Helland's name from the substitute teacher list. *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995). The School Corporation presented two such reasons to justify its actions. First, it stated that it removed Helland from the substitute teacher list because his job performance had not been satisfactory. In support of this contention, the School Corporation offered negative evaluations submitted by a number of teachers who criticized Helland's failure to follow the lesson plans the teachers left for him, and some of whom specifically requested that Helland not substitute for them again. Second, the School Corporation stated that it had dismissed Helland because he defied repeated warnings against interjecting his religious beliefs into the classrooms. Both of these are legitimate nondiscriminatory reasons for dismissing him. *See Lemon v. Kurtzman*, 403 U.S. 602, 619, 91 S.Ct. 2105, 2114, 29 L.Ed.2d 745 (1971) (public schools must make certain that "subsidized teachers do not inculcate religion"); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995) (poor job performance).

■ Once the School Corporation proffered these legitimate non-discriminatory reasons for its actions, Helland had to present evidence that those reasons were a pretext for discrimination. Because a Title VII claim requires intentional discrimination, the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate. "Pretext . . . means a lie, specifically a phony reason for some action." *Russell*, 51 F.3d at 68. "If the only reason an employer offers for [its challenged action] is a lie, the inference that the real reason was a forbidden one . . . may rationally be drawn . . . and there must be a trial." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994).

■ Here, Helland failed to produce evidence from which a rational factfinder could infer the School Corporation lied, and so the district court properly granted summary judgment for the School Corporation. *See Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990). Helland points to evidence showing that some teachers were pleased with his performance as a substitute. He also alleges that some of the reports upon which the Corporation relied in deciding to remove him from the substitute list misinterpreted certain events. But that misses the point. What matters here is not whether there is evidence contrary to that relied on by the School Corporation in deciding to remove Helland from the substitute list, but whether the School Corporation believed the information was correct. *See Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1304 (7th Cir.1991). We think that it did. The administrator who reviewed Helland's personnel file saw: numerous negative evaluations complaining about the quality of Helland's teaching, his inability to control his classes, and his failure to follow lesson plans; numerous requests that Helland not substitute for various teachers at several schools; and documentation of numerous admonitions to Helland that he stop interjecting religion into the classrooms. The reports provide sufficient nondiscriminatory reasons to conclude that Helland's work as a substitute teacher was subpar, and that the School Corporation did not unlawfully remove Helland from the substitute teacher list because of his religion itself. The district court properly granted the School Corporation's summary judgment motion as to Helland's Title VII and § 1983 claims.

## II. *Religious Freedom Restoration Act*

Helland's amended complaint alleged that by "terminating [him] for refusing to cease from carrying his Bible to work and to cease reading his Bible in privacy during job breaks, [the School Corporation] substantially burdened [his] free exercise of religion," and therefore violated RFRA. Under RFRA, the government may substantially burden a person's exercise of religion only if it demonstrates that its action furthers a compelling

governmental interest and that its action is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b). The district court granted summary judgment for the School Corporation on this claim because Helland had not responded to the motion with evidence sufficient to allow a factfinder to conclude that the School Corporation had substantially burdened his exercise of his religion without a compelling government interest.

▆▆▆▆ Although we might not agree that the School Corporation's actions substantially burdened Helland's exercise of religion, *see Mack v. O'Leary*, 80 F.3d 1175, 1179 (7th Cir.1996) (defining "substantial burden" under RFRA), the School Corporation concedes that issue, and we leave it at that. Helland appropriately "does not dispute that there is a compelling governmental interest against teaching religion in public schools." Indeed the Constitution requires governmental agencies to see that state-supported activity is not used for religious indoctrination. *See, e.g., Edwards v. Aguillard*, 482 U.S. 578, 597, 107 S.Ct. 2573, 2584–85, 96 L.Ed.2d 510 (1987); *Grand Rapids School Dist. v. Ball*, 473 U.S. 373, 385, 105 S.Ct. 3216, 3223, 87 L.Ed.2d 267 (1985); *Lemon v. Kurtzman*, 403 U.S. 602, 619, 91 S.Ct. 2105, 2114, 29 L.Ed.2d 745 (1971). Thus, the issue for us is whether removing Helland from the substitute teacher list was the least restrictive means of furthering the School Corporation's compelling governmental interest.

▆▆▆ Helland contends that the School Corporation infringed on his right to carry his Bible to work and to read the Bible in privacy during job breaks, but he offers no evidence to show that it told him he could not do these things. In fact, in the narrative attached to his initial complaint, Helland stated that the School Corporation "never once told me that I could not carry my Bible with me to school for personal use only." What the School Corporation frowned upon was not Helland's carrying the Bible to work and reading it in privacy, but his reading the Bible aloud to students and discussing reli-

gion during class, in contravention not only of the Constitution, but also of the lesson plans left for him.[1] A school can direct a teacher to "refrain from expressions of religious viewpoints in the classroom and like settings." *Bishop v. Aronov*, 926 F.2d 1066, 1077 (11th Cir.1991). And in fact the School Corporation has a constitutional duty to make "certain, given the Religion Clauses, that subsidized teachers do not inculcate religion." *Lemon*, 403 U.S. at 619, 91 S.Ct. at 2114.

Furthermore, the School Corporation gave Helland ample opportunity to practice his religion, so long as he did not use his classes for religious indoctrination. It tried to accommodate him by refraining from placing him at those schools and in those classes where teachers and students had complained about his interjection of religion in the classroom. And the School Corporation gave Helland ample warning that if he continued to do so, it would have no choice but to remove him from the substitute list. This is not only permissible, but as we already have noted, tolerating Helland's behavior would have opened up another constitutional can of worms.

Helland argues that the least restrictive means would have been to provide him with clear parameters for what the School Corporation deemed to be acceptable religious behavior. He contends that the substitute teacher handbook the Acting Superintendent gave him after the two met to discuss Helland's poor performance evaluations did not provide adequate guidance as to religious discussion in the classroom, and that his actions merely reflected his confusion because of that lack of guidance.

But Helland's assertion is belied by his own actions showing that he knew he should follow lesson plans and not discuss religion in the classroom. In his affidavit submitted in opposition to the School Corporation's summary judgment motion, Helland stated that after he read the Bible to a sixth grade class, a school administrator told him "that I absolutely could not read the Bible. He further

1. We note that in *Roberts v. Madigan*, 921 F.2d 1047, 1059 (10th Cir.1990), *cert. denied*, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992), the court upheld a school district's directive ordering a teacher to cease his silent Bible reading in the classroom during class time.

stated that he would have no choice but to fire me if I did it again. Now I knew what the School's policy was." And in a letter he wrote to the Superintendent after the School Corporation removed him from the substitute list, Helland admitted that after he discussed creationism in a fifth grade science class, he told the students that he could get into trouble for talking about Jesus and the Bible in school, and so he agreed not to assign homework if they would not tell anyone about the discussion.[2]

### III. *Due Process*

Helland also contends that the district court should have addressed his due process claim, which the court found waived. Helland concedes that he "did not specifically raise the issue of a Due Process violation in the District Court." The only phrase in his original *pro se* complaint that conceivably might raise the issue is a statement in his narrative that "I complain that in none of these schools was I given a chance to tell the truth as I saw it." But Helland did not follow up with any constitutional or statutory predicate for this statement, and made no attempt to invoke the due process clause or 42 U.S.C. § 1983. Furthermore, Helland's amended complaint, filed by counsel, deleted that statement and contained no allegation of a due process claim. Helland's failure to raise the claim below precludes him from doing so on appeal. *Citizens Ins. Co. of Amer. v. Barton,* 39 F.3d 826, 828 (7th Cir. 1994).

Helland contends, however, that because he is a *pro se* plaintiff, we should allow him to press his claim. However, we have not routinely excused *pro se* plaintiffs from the same waiver rules attorneys face. *Dixon v. Chrans,* 986 F.2d 201, 203 (7th Cir.1993). Furthermore, although Helland filed his original complaint *pro se*, he was represented by counsel when he filed his amended complaint.

2. Because we conclude that removing Helland from the substitute teacher list was the least restrictive means of furthering the compelling governmental interest in avoiding the unconstitutional interjection of religion into the South Bend public school classrooms, we do not reach the School Corporation's argument that RFRA represents an unconstitutional exercise of Congressional power. We note, however, that we recent-

We see no reason to depart from the general rule of waiver in this case.

### CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment for the School Corporation.

AFFIRMED.

ly deferred to the Fifth Circuit's analysis of why RFRA does not violate the separation of powers or the establishment clause of the First Amendment. *Sasnett v. Sullivan,* 91 F.3d 1018 (7th Cir.1996), citing *Flores v. City of Boerne,* 73 F.3d 1352 (5th Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3017 (U.S. June 25, 1996) (No. 95–2074).