129 F.3d 119
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Asad ASADI, Plaintiff-Appellant,
v.
Togo D. WEST, JR., Secretary of the Army for the United
States Department of the Army, Defendant-Appellee.
 No. 96-3761.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 21, 1997*
Decided Sept. 11, 1997.
 
 Appeal from the United States District Court for the Central District of Illinois.
 Before CUMMINGS, BAUER, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 Asad Asadi was employed by the Rock Island Arsenal (Arsenal) as a mechanical engineer. He brought suit against the Secretary of the Army (Secretary) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging discrimination on the basis of national origin. The district court granted summary judgment in favor of the Secretary. We affirm.
 
 
 2
 Asadi became a naturalized citizen of the United States in 1981. His country of origin is Iran. After he became a citizen, he was hired by the Arsenal and was promoted to the position of general engineer in 1989. Since 1991, Asadi has filed six Equal Employment Opportunity (EEO) complaints alleging discrimination based on his national origin. In 1993, Asadi, represented by counsel, filed suit claiming that he was denied promotions and subjected to retaliation after filing the EEO complaints.
 
 
 3
 Asadi's principal argument on appeal is that he was not given various promotions at the Arsenal due to his national origin and, thus, the Secretary's motion for summary judgment should have been denied. Asadi has failed to address each of his claims coherently for appellate review.[1] We are reluctant to research and construct Asadi's legal arguments, see Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986), cert. denied, 479 U.S. 1056 (1987); therefore, we will only address Asadi's discernable, supported arguments raised in his appellate brief.
 
 
 4
 The standards applicable to the grant of summary judgment in an employment discrimination case are well-established and, thus, we do not repeat them. See, e.g., Fuka v. Thompson Consumer Elec., 82 F.3d 1397, 1402 (7th Cir.1996). To succeed on a claim of discrimination, a plaintiff may meet his burden of proof by establishing intentional discrimination either through direct or circumstantial evidence of discriminatory intent. Helland v. South Bend Community School Corp., 93 F.3d 327, 329 (7th Cir.1996), cert. denied, 117 S.Ct. 769 (1997). Direct evidence speaks directly to the issue of discriminatory intent and must be related to the specific employment action at issue. Cowan v. Glenbrook Security Serv., Inc., No. 96-3897, slip op. at 9 (7th Cir. July 23, 1997).
 
 
 5
 We first turn to Asadi's claim that he has presented direct evidence of discriminatory intent. He presents two documents, the "Miller letter" and the "McKinney note" in support of his claim of discriminatory intent. The handwritten, undated Miller letter does not directly discuss Asadi's national origin but insinuates that it is a problem. The letter states in pertinent part:
 
 
 6
 Although a great level of effort is being directed to solving this problem the fact remains that we know of a Reg [sic] which serves us with a limited warning or advisory information for firing Asadi. Failure to do so could have [an] adverse effect on our troops, mission and American lives in combat! (Record 78, Attachment 1, at 1-2)
 
 The undated McKinney note states:
 
 7
 Because of security concerns, I have discussed Asadi's job situation with Col. Karr. He agreed that we can not and will not consider him [Asadi] for any promotion regardless of his high credentials and hard work. Although he is capable and highly qualified to get almost any 14 or higher position, we cannot compromise our national security by keeping and promoting him because he is from Iran. (Record 78, Attachment 2).
 
 
 8
 These letters reflect that employees of the United States Army feared Asadi might impact national security negatively because of his national origin. However, remarks made about Asadi's national origin do not necessarily prove that national origin was instrumental in particular employment actions; Asadi must show that these remarks are directly linked to the specific adverse employment actions at issue. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251-52 (1989); see also Cowan v. Glenbrook Security Serv., Inc., No. 96-3897, slip op. at 9 (7th Cir. July 23, 1997). Asadi asserts that because Milton McKinney, the author of the McKinney note, signed some of the personnel actions forms that were pertinent to his case, McKinney was the "decision-maker" involved. Regardless of the decision-maker, Asadi fails to show the nexus between the statements in the McKinney note and the Miller letter and the decision to promote other qualified candidates to the specific promotions he sought. See Smith v. Firestone Tire and Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989) (even when remarks are made by a decision-maker, unless they are related to the specific employment action at issue they do not demonstrate illegitimate criteria). Although the candid statements in the note and letter are troublesome on their face, without a link to the specific promotions involved the letters are insufficient direct evidence of discriminatory intent.
 
 
 9
 Asadi claims he has presented indirect evidence of intentional discrimination, which can be established through the burden-shifting method of proof in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). However, in Fuka this court refrained from a mechanistic application of the McDonnell Douglas methodology and proceeded to consider whether the plaintiff had met her burden of showing pretext, i.e., that the employer's legitimate, non-discriminatory reasons for its employment actions were pretext for discrimination. Fuka, 82 F.3d at 1404; see also Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 802. We conclude this approach is appropriate for Asadi's claims.
 
 
 10
 Asadi asserts that the first occurrences of discrimination happened in October 1991, December 1991, and February 1992, when he was not promoted to Supervisory General Engineer or Supervisory Procurement and Production Analyst. The Secretary maintains, and Asadi admits, that these positions were cancelled due to a hiring freeze. This hiring freeze prohibited lateral reassignment, internal promotions, and outside hiring. The Secretary temporarily filled the supervisory engineer positions with people from within the exact directorate, shifting the existing staff to accommodate the directorate's need during the hiring freeze. Asadi claims that because he did not receive a temporary position, he was adversely affected, yet he does not substantiate why the strategy of hiring temporary replacements from within the office was pretext for discrimination. There is also substantial evidence in the record that the production analyst position was an open and continuous announcement, that is, there was no actual vacancy. In sum, Asadi has failed to raise a genuine issue of material fact rebutting the Secretary's rationale that the hiring freeze was a legitimate reason for its employment actions.[2]
 
 
 11
 Asadi also contends that he sought a promotion in the Weapons Division that was given to an allegedly unqualified candidate, Douglas Smith. The selection statement for this position acknowledges that Smith had demonstrated the desired objectives of the position. The statement continues:
 
 
 12
 Most notable [sic], since this will be a senior mid-level management position he [Smith] has all the significant critical management traits. His diverse background both in industry and government in the production area uniquely qualify him for this job. Finally, supervisory comments about Mr. Smith's performance in all areas are laudatory. His record reflects a well rounded manager, high quality performance with excellent overall experience. (Record 68, Exhibit 10, at 1).
 
 
 13
 Asadi asserts that he was just as qualified as Smith, if not more so. Our inquiry, however, is whether the Secretary's decision was pretextual. The Secretary gave detailed information supporting the decision to hire Smith. Asadi presents no argument or evidence establishing that this rationale is mere pretext for not giving him the promotion because he was a naturalized citizen originally from Iran.
 
 
 14
 It is undisputed that Asadi's branch was eliminated after the Arsenal directed that the office be reorganized. Asadi argues that after the downsizing, he was prohibited from competing for a job opening. The Secretary maintains that Asadi did not submit the Army Civilian Career Evaluation System package, which was the application to begin the process; therefore, he was not considered for the position. The successful candidate did file the proper forms. Once again, Asadi does not counter how the Secretary's legitimate rationale was pretextual.
 
 
 15
 Asadi asserts occurrences to show that his supervisors' actions were discriminatory and retaliatory, none of which is directly linked to any specific adverse employment action. Based on the Miller letter, Asadi argues that the Department of Defense Regulation, which denied security clearances for recently-naturalized citizens from 29 countries including Iran, was used to deny him employment opportunities. There is no indication in the record that the regulation, 32 C.F.R. § 154 et seq. (1987), was applied to any Arsenal employee. Specifically, there is no evidence in the record indicating that this regulation was applied to Asadi at any point, let alone in relation to an adverse employment action. In addition, Asadi had a security clearance before, during, and after the regulation was enacted.
 
 
 16
 In the statement of the case and facts in his appellate brief, Asadi argues that he was wrongfully denied access to a high security meeting, although he had a security clearance. The Secretary explained that other people were turned away from the meeting due to an administrative error--their names were not on the list of people who had been verified to attend or given a security clearance. The Secretary also maintains that as soon as the error was uncovered, steps were taken to remedy the situation. Asadi fails to offer any facts that established he was turned away due to his national origin.
 
 
 17
 Viewing the facts in a light most favorable to Asadi, the Secretary has met its burden of demonstrating the absence of a genuine issue of material fact. Therefore, the district court judgment is
 
 
 18
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 In fact, Asadi admits in his reply brief that he tried to avoid repeating every single issue in the case. However, it is well-established in this circuit that issues not presented in the opening brief are waived on appeal. See Sere v. Board of Trustees, 852 F.2d 285, 287-88 n. 3 (7th Cir.1988) (collecting cases)
 
 
 [2]
 Asadi argues that his job applications mysteriously disappeared during the hiring freeze. He also argues that the Department of the Army denied him information and misled the district court by supplying "flawed affidavits containing false statements and tampered documents." There is no evidence in the record supporting these claims, nor does Asadi substantiate these assertions