**Stephen J. WILLIAMS, Plaintiff,**

v.

**Patricia VIDMAR, et al., Defendants.**

**No. C 04–04946JW(PVT).**

United States District Court,
N.D. California.

April 28, 2005.

Joshua William Carden, Benjamin Wyman Bull, Alliance Defense Fund, Scottsdale, AZ, Kevin Hayden Theriot, Alliance Defense Fund, Olathe, KS, Terry Lee Thompson, Terry L. Thompson, Attorney at Law, Alamo, CA, Robert Henry Tyler, Alliance Defense Fund, Murrieta, CA, for Plaintiff.

Mark E. Davis, Needham, Davis, Kirwan & Young, LLP, San Jose, CA, Peter W. Sturges, Jonathan Pearl, Miller Brown & Dannis, San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART ˙ AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

WARE, District Judge.

### I. INTRODUCTION

In many respects, this is a case of first impression. The issue is whether a public elementary school teacher may sue the Principal and School District claiming violations of the teacher's constitutional rights arising from restrictions placed on the teacher's use of supplemental classroom materials having religious content. The Court finds that there is no legal basis for the lawsuit and dismisses all but one of the claims. In the surviving claim, the teacher alleges that all other teachers are allowed to use similar supplemental materials while he is being restricted from using them because he is an avowed Christian. If he can prove that claim, it would be a violation of the Equal Protection Clause.

### II. BACKGROUND

Plaintiff Stephen J. Williams ("Plaintiff" or "Williams") is a teacher at Stevens Creek Elementary School in the Cupertino Union School District. Williams is an avowed orthodox Christian. In his complaint, Williams alleges that Defendant Principal Vidmar approached him regarding the religious nature of his classroom discussions. Williams explained to Principal Vidmar that the religious discussion was in response to a student question re-

garding the words "Under God" in the Pledge of Allegiance. Williams explained that in response to the question, he "facilitated a short discussion among the students." (Complaint ¶ 30). Later when the Principal raised questions about another religion discussion, Williams explained that when a student asked, "What's a Christian?" he responded, "A Christian is someone who follows the teaching of Jesus Christ." (Complaint ¶¶ 36–36).

Williams alleges that after these two incidents, Principal Vidmar confronted him, essentially asking him why God was being taught during class. (Complaint ¶ 32). As the result of these confrontations, Williams voluntarily submitted proposed lessons to Principal Vidmar. On one occasion, Williams showed her an assignment sheet with proposed activities to supplement a C.S. Lewis novel the class was reading. Of the nine assignment choices, one directed students to explain the Christian allegory in C.S. Lewis' work. According to Williams, Principal Vidmar approved its distribution. (Complaint ¶¶ 44–49). Williams alleges that he also invited Principal Vidmar to observe his lessons to make sure his classroom discussions referencing religion were appropriate. Principal Vidmar observed a class where William distributed a "Myth/Fact" handout about Thanksgiving from the History Channel website and a handout containing President Bush's Thanksgiving proclamation. (Complaint ¶¶ 50–51).

Williams alleges that there were occasions, however, where Principal Vidmar did not approve of his lesson plan. For example, Williams alleges he produced and wanted to distribute to the students an "Easter activity" sheet. Williams presented the sheet to Principal Vidmar for approval and she denied his request to use the sheet in his lesson plans. In an E-mail denying approval of the worksheet, Principal Vidmar wrote, "Easter and Christiani-

ty should not be part of your classroom instructions or discussions." (Complaint ¶¶ 55–57). Williams alleges that in this E-mail Principal Vidmar wrongly accused him of "being insensitive to [their] diverse religious community by insisting on focusing on [his] own beliefs in the classroom."

Accordingly to the Complaint, there was one occasion where Williams did not submit his lesson plan for preapproval. Williams provided students with a handout containing the history of the National Day of Prayer on one side of the page, and President Bush's proclamation of a Day of Prayer on the other. A parent of one of Williams' students E-mailed a complaint about this handout to Williams and to Principal Vidmar. Williams alleges that he responded to the complaint by explaining that he had included the document during the class lessons about George Washington and the First Continental Congress as an example of the historical integration of prayer into the society of the founding era. Williams alleges that immediately following the parent's complaint, Principal Vidmar issued a memo to him directing him to "stop sending out materials of a religious nature with your students" and to "provide [her] with an 'advance' copy of materials he will be sending home at least two days prior to their being sent out." (Complaint ¶ 63). Thus, Williams alleges that Principal Vidmar began to systematically censor his choice of supplemental materials and restricted him to a prescribed set of supplemental materials.

Because of these activities, Williams filed this lawsuit against the Principal, the Superintendent, and the School Board (collectively "Defendants"). In his four-count complaint, Williams alleges that the restrictions on his use of supplemental materials which have religious content violate several of his rights under the United

States Constitution, including: (1) Equal Protection; (2) Freedom of Speech; (3) Due Process; and (4) the Establishment Clause.

The Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). This Court held a hearing on Defendants' motion on March 30, 2005. For the reasons set forth below, Defendants' motion to dismiss is DENIED as to Claim One and GRANTED as to Claims Two, Three, and Four.

### III. STANDARDS

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A claim may be dismissed as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir.1998) ("The focus of any Rule 12(b)(6) dismissal ... is the complaint"). A court may dismiss a case without leave to amend if the Plaintiff is unable to cure the defect by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir.2000).

The Federal Rules of Civil Procedure have established a liberal standard of "notice pleading." A plaintiff's factual plead-ing is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2) & (e)(1). The Supreme Court has explained that the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). The Supreme Court has reaffirmed the liberal notice-pleading requirements by stating that a prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). These are the pleading standards the Court is obliged to apply to Williams' complaint.

### IV. DISCUSSION

#### A. Under the Notice Pleading Requirements of the Federal Rules of Civil Procedure, Williams States a Claim for Violation of the Equal Protection Clause.

Plaintiff's First Claim alleges discrimination in violation of the Equal Protection Clause. Unlike the other claims, Defendants contend that Plaintiff's First Claim should be dismissed not because he cannot state a claim, but because his complaint does not contain a factual description of a class of persons who are treated differently from him and is therefore sufficient to state a claim for discrimination.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that

all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). The guarantee of equal protection is not a source of substantive rights or liberties, but rather a right to be free from discrimination in statutory classifications and other governmental activity. *See Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (citations omitted). As Defendants correctly point out, "discrimination cannot exist in a vacuum; it can only be found in the unequal treatment of people in similar circumstances." (Motion ¶¶ 7:23–25) (citing *Attorney General v. Irish People*, Inc. 684 F.2d 928, 946 (D.C.Cir.1982)).

■ Williams makes the following allegations which the Court accepts as provable for purposes of this motion: Plaintiff is a teacher in the Defendant District and "a Christian," who "adheres to orthodox Christian beliefs as prescribed by the Bible." (Complaint ¶ 23). Principal Vidmar is aware that he is a Christian. (Complaint ¶ 26). He and other teachers in the District frequently supplement the District-approved textbook with curriculum-related literature to aid students in understanding the topic under study. (Complaint ¶¶ 39–40). It came to the attention of the Principal that some of Williams' supplemental materials, though appropriately educational, contained religious content. A parent of a student emailed a complaint about one of the handouts. (Complaint ¶ 61). The Principal began to question his use of these materials. Eventually, Principal Vidmar prohibited him from using supplemental materials without advance approval from her. (Complaint ¶ 44–75). Plaintiff expressed his belief to the Principal that everything religious was being censored from his curriculum because of his personal beliefs. (Complaint ¶ 76). On September 29, 2004, Principal Vidmar directed that all future social studies handouts must come from a designated packet of materials. (Complain ¶ 82). Other teachers at the school are not required to submit lesson plans and supplemental materials in advance, nor are they limited to a packet issued by the Principal. (Complaint ¶¶ 87–88). "The Defendants have censored Mr. Williams' choices of supplemental handouts—chiefly excerpts of primary source documents from America's founding ear, or from state constitutions—containing religious content because Mr. Williams is a Christian. Defendants have ordered Mr. Williams (but no other teacher)—not to distribute any supplemental handout unless it appears on a list of authorized handouts that applies only to Mr. Williams." (Complaint ¶ 1).

In Section VII of his complaint, into which he incorporates all of his previous allegations, Williams alleges that Defendants allow "similarly situated" teachers to include religious expression in their lessons and supplemental handouts, do not require them to submit their lesson plans and supplemental materials in advance, and do not limit their choices in the same fashion as Defendants have limited the Plaintiff. (Complaint ¶¶ 126–128). He alleges that Defendants have treated him differently "because he is a Christian." (Complaint ¶ 129). He alleges that these policies and practices violate the Equal Protection Clause. (Complaint ¶ 131).

Defendants rely on the Ninth Circuit's equal protection analysis in the case of *Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir.1995), to argue that the allegation "similarly-situated teachers" does not sufficiently identify the class of persons referred to for an equal protection claim. *Freeman* imposed a more detailed factual identification: "Once the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situat-

ed' class against which the plaintiff's class can be compared." *Id.* at 1187 (quoting *Attorney General v. Irish People Inc.*, 684 F.2d 928, 946 (D.C.Cir.1982)). However, the level of specificity required in *Freeman* is distinguishable from the case at hand. In *Freeman*, a bar owner appealed a district court order granting the defendant's motion for judgment as a matter of law. Thus, when the Ninth Circuit reviewed the claims it was not addressing the requirements of *pleading* an equal protection case, but rather, the requirements of *proving* one. As applied to this case, *Freeman* should be read as requiring more detailed identification of a similarly situated class once the case goes forward, putting the burden on the Plaintiff to identify other teachers to whom he may compare, and thus, allowing the Defendants to prepare a defense.

The Court finds the case of *Kiser v. Naperville* 227 F.Supp.2d 954 (N.D.Ill. 2002) to be more applicable with respect to the pleading requirements in an equal protection case. In *Kiser*, a former school employee who served as school the district's counsel brought an equal protection claim against the school district. *Id.* at 972. The defendant in *Kiser* moved to dismiss the action, arguing that the complaint failed to allege that other lawyers were employed by the school district and treated differently than the plaintiff. The plaintiff's pleading in *Kiser* is similar to what has been alleged in this case: "Defendants violated Kiser's right to equal protection under the law by treating Kiser differently from other similarly situated employees." *Id.* at 972. The district court found the allegation sufficiently plead even though it was conclusory because the language that preceded it put the claim into context. *Id.*

The Defendants contend that Williams must allege a more specific class, such as, "teachers who propose to distribute the same handout as the plaintiff, or teacher who received a parental complaint about his handouts but whose classroom materials are not scrutinized." (Motion ¶ 8:5–7). This appears to the Court to be the basis of a defense which the Defendants might raise to prove that the Plaintiff is not being treated differently because of his Christianity but because of the content of his materials or parental complaints. The Court declines to impose a higher level of specificity in the complaint during the pleading stage of the litigation.

Under the liberal notice-pleading standard, it seems clear that Plaintiff's broadly identified class is sufficient to put Defendants on notice. Although the allegation that he is treated differently from teachers who are "similarly situated" is a legal conclusion, the Court finds that in the context of the complaint, Williams has sufficiently alleged that because he is an avowed Christian, he is being treated differently than other teachers in his school with respect to his conduct as a teacher. Those allegations, liberally construed, allege facts which if proven can entitle him to relief. Therefore, the Defendants' motion to dismiss the Equal Protection claim is denied.

**B. *Williams' Claim That Defendants Violated His Constitutional Right to Freedom of Speech Fails Because Teachers Do Not Have a First Amendment Right to Determine What Curriculum Will Be Taught in the Classroom.***

In his Second Claim, Williams argues that the restrictions on his use of supplemental materials violated his free speech rights under the First Amendment. He contends that Defendants have censored his speech because of its religious content even though speech about religion is necessary to fulfill the state teaching standards. (Complaint ¶¶ 134–135). Defen-

dants move to dismiss this claim on the ground that on the face of the complaint, what Williams is complaining about is the legitimate exercise of pedagogical control of the material used in a public elementary classroom which cannot be the basis of a First Amendment violation. (Motion ¶¶ 8:12–15).

As a general proposition, students and teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). A claim by a teacher that his or her First Amendment rights are being violated depends upon the nature of the speech and where that speech is taking place. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Both parties rely on *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) as controlling authority. In *Hazelwood*, the U.S. Supreme Court held that the First Amendment free speech right of high school students was not violated when, out of concerns for the privacy of other students, the principal deleted articles proposed for publication in the student newspaper. The key to the holding in *Hazelwood* is its discussion of the importance of determining whether the expression allegedly being interfered with is being made in a public forum or a nonpublic forum. *Id.* at 267, 108 S.Ct. 562. The Supreme Court described when school facilities are regarded as a public forum: " . . . only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public,' or by some segment of the public, such as student organizations." *Id.* (citing *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 n. 7 & 47, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).

Speech in nonpublic forums is subject to significantly greater regulation than speech in traditional public forums. *See Cornelius*, 473 U.S. at 806, 808, 105 S.Ct. 3439. Thus, where school facilities have been "reserved for other intended purposes, 'communicative or otherwise,' . . . and no public forum has been created, . . . school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Hazelwood*, 484 U.S. at 267, 108 S.Ct. 562; *Perry*, 460 U.S. at 46, 103 S.Ct. 948.

The *Hazelwood* Court concluded that the school paper was a nonpublic forum. It then analyzed whether the restrictions were "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 270, 273, 108 S.Ct. 562: "[W]e hold that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 571.

Similarly, in *Hedges v. Wauconda Community Unit School Dist.*, 9 F.3d 1295 (7th Cir.1993) the Seventh Circuit held that a "junior high school is a nonpublic forum, which may forbid or regulate many kinds of speech," including non-school sponsored literature. *Id.* at 1302. "The same is true *a fortiori* of a public elementary school where, with even younger children, the need for structuring the educational environment is that much greater." *See Muller v. Jefferson Lighthouse School*, 98 F.3d 1530, 1539 (7th Cir.1996).

In summary, there is a difference between the free speech rights of a university professor when expressing his or her point of view in Sproul Plaza and those of a fifth grade elementary school teacher in expressing a point of view as part of class-

room instruction. In order to state a claim for violation of his free speech rights, Williams must allege that his expression was either in a public forum or, if in a nonpublic forum, that the restriction was not related to a legitimate pedagogical concern. Williams does not make such allegations.

There is no allegation that classes at Steven Creeks Elementary School have been opened to anyone for "indiscriminate use." In fact, the complaint alleges that there are specific standards for instructional speech and that the standards are allegedly too strict. Indeed, the Court takes judicial notice that a K–12 classroom in a public elementary school is a nonpublic forum. Even finding as it does that Williams is alleging restrictions on his speech in a nonpublic forum, he might still state a claim if he alleges restrictions which are not "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 270, 273, 108 S.Ct. 562.

Williams is correct insofar as he claims that under relevant authorities, restriction under the Establishment Clause do not mean that teachers can never speak about religion. Religion is an important part of history, culture and current events. However, as the Tenth Circuit has noted, there is a "difference between teaching about religion, which is acceptable, and teaching religion, which is not." *Roberts v. Madigan*, 921 F.2d 1047, 1055 (10th Cir.1990) (*quoting Roberts v. Madigan*, 702 F.Supp. 1505, 1517 (D.Colo.1989)) (teacher could be prohibited from reading Bible during silent reading period, and from stocking two books on Christianity on shelves because these things could leave students with the impression that Christianity was officially sanctioned).

■ When a complaint alleges facts which on its face demonstrate a reasonable concern that a teacher in an elementary classroom is promoting a faith, the school officials do not violate the teacher's free speech rights if they order the teacher to cease and desist from the religious-based activities. *See Marchi v. Board of Coop. Ed. Services*, 173 F.3d 469 (2d Cir.1999). In *Marchi*, a special education teacher, after converting to Christianity began including forgiveness, reconciliation and God into his teaching. He was given a "cease and desist" directive. When he failed to comply, he was suspended and required to affirm in writing he would comply. Upon his return, the teacher sent a note to a parent including religious references. The teacher brought a § 1983 action against the school board claiming free speech and free exercise of religion violations. The court upheld the school board's directive holding that schools have a constitutional duty to ensure that public school teachers do not give the impression that the school prefers one religion or even religion in general. *See also Helland v. South Bend Community School Corp.*, 93 F.3d 327 (7th. Cir.1996); *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517 (9th Cir.1994); *Bishop v. Aronov*, 926 F.2d 1066, 1077 (11th Cir.1991) (schools may direct teachers to "refrain from expression of religious viewpoints in the classroom and like settings.").

■ The legal viability of a claim must be judged based on the facts stated as a basis for the claim. In this case, Williams claims that Defendants have no reasonable pedagogical basis for prohibiting him from instructing on Christianity and utilizing these documents as teaching tools. On the face of the complaint, however, Williams alleges events, which, if true, create a pedagogical basis for the action taken by the Defendants, i.e., the interests of a public school to avoid Establishment Clause violations. Williams alleges that the letter from Principal Vidmar to him was a directive for him to "stop sending

out materials of a religious nature with [his] students" and to "provide ... 'advance' copy of materials [he] will be sending home at least two days prior to their being sent out so [she] can make sure that *materials will not be of concern to the parents or violate the separation of religion and public education.*" (emphasis added) (Complaint ¶ 63). This letter and associated restrictions were not issued until after a series of conferences regarding the religious content of supplemental materials used by Williams. The restrictions also followed a complaint by a parent of one of his students about the religious nature of materials he had sent home with students. Under these alleged circumstances, no violation of free speech rights as permitted in a nonpublic elementary school classroom can be stated. The Second Claim is dismissed with prejudice.

### C. *Plaintiff's Claim of Violation of Due Process Must Be Dismissed Because There is No Underlying Constitutional Right Being Infringed By The Defendants.*

Plaintiff's Third Claim alleges that his constitutional right to due process of law [1] under the First and Fourteenth Amendments to the Constitution have been violated because Defendants' "policy and practice with respect to religious speech in the classroom, at least as applied to Mr. Williams, are hopelessly vague." (Opposition ¶ 22–23). In his complaint Williams alleges that the policies and practices violate due process because they "do not give adequate notice as to what conduct is prohibited" and "vest unfettered discretion in school officials to control teachers' speech

based on its content and viewpoint and the religious view of the teacher." (Complaint ¶¶ 141–142).[2]

Defendants move to dismiss this claim on the ground that no due process right exists upon which Williams can base a claim because school district officials have the discretion to restrict classroom speech in the area of religion and may do so summarily without notice. (Motion ¶ 13:3–24). The Defendants further argue for dismissal on the ground that, even assuming that some due process notice is required before classroom religious speech may be restricted, the allegations of Williams' complaint demonstrate that he received fair notice of the school District's expectations with respect to his classroom.

 To allege a procedural due process claim on the basis of a vague regulation, Williams must first allege a deprivation of a constitutionally protected interest, and second, allege that the deprivation was achieved by means of constitutionally vague policy or procedure. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Unconstitutional vagueness implicates dual concerns of fair notice of the line between lawful and unlawful conduct, and sufficiently explicit statutory limitations on the discretion of officials to avoid arbitrary and discriminatory enforcement. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

A different standard applies when a challenge to a regulation is based on facial vagueness as opposed to a challenge that the regulation is vague as applied to the

---

1. Williams is alleging a procedural due process claim only. He does not allege that he has been disciplined or otherwise deprived of life, liberty or property. Thus, he is not stating a claim for substantive due process.

2. Although Williams alleges that the challenged policy and practice restricts "Christian teachers from handing out documents containing religious references," (Complaint ¶ 140) the Court regards that allegation as properly part of this equal protection claim and will not consider it here.

plaintiff. In his motion, Williams asks the Court to consider his complaint as one which challenges the facial vagueness of both the Education Code and the school District's policies and practices. Williams has not sued any official responsible under the State Education Code. The Court declines to address facial vagueness of the Education Code. The Court considers Williams' complaint to be limited to a claim that the Defendants school district's policy and practice in implementing the Education Code is unconstitutionally vague as applied to him. The Court restricts its consideration to that claim.

■ As indicated above, a plaintiff claiming violation of due process through application of a vague regulation must, as a threshold matter, allege that a regulation affects constitutionally protected conduct. Otherwise, the facial vagueness challenge fails. Williams' only allegation is that he was deprived of a liberty interest in his classroom speech when Principal Vidmar imposed review of his supplemental materials before he could use them and ultimately restricted him to a designated group of materials. The Court's decision in Section B *infra*, that Williams has not alleged a violation of his free speech right under the circumstances alleged in his complaint, is fatal to this due process claim. Since no constitutionally-protected activity is being restricted, there can be no claim that the procedures used to impose the restrictions are constitutionally insufficient.

Moreover, the Court regards Williams' claim of vagueness as disingenuous. Williams alleges that he received clear direction as to what Principal Vidmar considered permissible and what she considered impermissible. Williams' own allegations demonstrate that he understood the distinction Principal Vidmar was making between permissible materials about religion and materials which com-

ment about particular religious principles. For example, Plaintiff recounts that he submitted an "Easter activity sheet" to Principal Vidmar for approval and the idea was rejected. In an E–Mail, Principal Vidmar clearly explained to Williams that "Easter and Christianity should not be part of [his] classroom instruction or discussion." (Complaint ¶ 56–57). Plaintiff alleges other occasions where he voluntarily sought Principal Vidmar's review of what he believed might be questionable handouts and lesson plans after the Easter activity was rejected. Williams alleges that whenever Principal Vidmar rejected one of his proposals, that rejection was accompanied by an explanation of why she was doing so. This Court finds that a teacher of ordinary intelligence would be able to gauge from the alleged interactions and the accompanied explanations which materials were unacceptable for teaching about religion. The Third Claim is dismissed with prejudice.

### D. Plaintiff's Claim for Violation of the Establishment Clause Must Be Dismissed Because He Has No Right to Express His Religion in an Elementary School Classroom

Plaintiff's Fourth Claim alleges that Defendants' policy "demonstrates impermissible hostility towards religion" and "excludes [his] religious expression." (Complaint ¶¶ 147–149). Defendants contend that this claim fails because a public school may not endorse a religion. In the view of the Court, there is a well-defined difference between *being* an elementary school teacher who is an avowed Christian, which Williams is free to be, and *expressing* the Christian faith in the classroom.

■ The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amend-

ment, provides that "Congress shall make no law respecting an establishment of religion ..." U.S. Const. amend. I. *See Widmar v. Vincent,* 454 U.S. 263, 271 n. 8, 102 S.Ct. 269, 70 L.Ed.2d 440, (1981). This Clause operates to prohibit the government from preferring one religion over another. *Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). Moreover, "commanding neutrality of Religious Clauses [does] not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice." *Bd. of Edu. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 705, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994). To determine whether a policy or an accommodation statute achieves this neutrality, a court examines it under the three-part test developed in *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). A policy survives Establishment Clause scrutiny if: (1) it has a secular purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion. *Id.,* at 612–613, 91 S.Ct. 2105.

■ During oral argument, Williams was unable to proffer any current case law interpreting the Establishment Clause to allow a public school teacher to express that teacher's religious belief in a classroom environment. It seems clear that limiting a teacher's lesson plans does not burden his religious practice. This Court agrees with the Defendants that the actions of Principal Vidmar were consistent with the requirements under the *Lemon* test. Principal Vidmar's review and subsequent restriction of Williams teaching materials had a secular purpose of avoiding violation of the Establish Clause and being cautions "where a 5th grade teacher might be taken by his impressionable audience to endorse a particular religious viewpoint." (Motion ¶ 15:19–21).

Williams contends that Defendants' policy of restricting his religious speech because he is a Christian constitutes hostility to religion forbidden by the second prong of the *Lemon* test. The second prong provides that a policy must, as its primary effect, neither advance nor inhibit religion. Williams is thus alleging that by requiring him to submit his supplemental list for approval prior to distribution that the Defendants are preventing him from practicing his religion. Williams relies on *Kreisner v. City of San Diego,* 1 F.3d 775, 785 (9th Cir.1993) which states that the "exclusion of religious groups from a forum otherwise open to all would demonstrate government hostility to religion rather than the neutrality contemplated by the Establishment Clause." The reliance on *Kreisner* is fatal to Williams' claim because a fifth grade classroom is not otherwise "open to all." As previous discussed, an elementary school classroom is a non-public forum. The complaint does not allege that Principal Vidmar has allowed other teachers or speakers to express their religious views in Williams' fifth grade class or any other classroom on campus. Similarly, Williams' reliance on *Gregoire v. Centennial School Dist.,* 907 F.2d 1366 (3rd Cir.1990), is misplaced since the focus of *Gregoire* was the state's refusal to let religious groups use facilities open to others. Here, Williams has not alleged any facts, other than the preview of his supplemental handouts, to support his contention that the Defendants' policy constitutes hostility to religion.

Insofar as Williams alleges that Defendants have subjected him to restrictions on his classroom instruction because he is a Christian and that other teachers at the school are not subject to the same scrutiny, those allegations may be considered part of his First Claim for discrimination in violation of the Equal Protection Clause.

Therefore, the Fourth Claim is dismissed with prejudice.

### E. Defendants' Assertion of Qualified Immunity as a Defense Fails Because the Eleventh Amendment Does Not Bar Actions Against State Officers in Their Official Capacities if the Plaintiff Seeks Only a Declaratory Judgment or Injunctive Relief.

The Defendants move the dismiss the entire complaint on the ground that all of the Defendants are immune from the claims stated by Williams under the Eleventh Amendment of the U.S. Constitution.

 The Eleventh Amendment prohibits damage actions against state officials acting in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, the Eleventh Amendment "does not bar actions against state officers in their official capacities if the [plaintiff seeks] only a declaratory judgement or injunctive relief." *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted). Williams is not seeking damages in this case and has sued Defendants in their official capacity only. Therefore, qualified immunity does not apply.

Defendants contend that insofar as Williams seeks recovery of attorneys' fees, he is seeking damages. However, Defendants' contention ignores 42 U.S.C. § 1988 which provides that one who prevails in a § 1983 action is entitled to recover attorneys' fees as costs, not as damages. 42 U.S.C. § 1988(b) ("... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, ..."). *See Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) ("Congress has made clear in § 1988 its intent that attorney's fees be available in any action to enforce a provision of § 1983.

[Citation] The legislative history of the statute confirms Congress' intent that an attorney's fees award be available even when damages would be barred or limited by 'immunity doctrines and special defenses, available only to public officials.' ").

When government officials assert qualified immunity as a basis for dismissing an action under 42 U.S.C. § 1983, the court must first determine whether the plaintiff has alleged the deprivation of a constitutional right, and if so, then determine "whether the right was clearly established at the time of the alleged violation." *Wilson v. Lane*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)); *see B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1265 (9th Cir.1999).

This Court has decided that, based on the allegations in his Complaint, Williams has alleged an Equal Protection claim. Williams has sufficiently alleged the deprivation of a constitutional right to Equal Protection of the law. As to the second prong, at the time of these events it was clearly established that discrimination against a person based on that person's religion is unconstitutional. The Court is not now called upon to assess whether such a violation actually took place here; that comes later in this litigation. Therefore, Defendants' motion to dismiss based on qualified immunity is denied.

### F. Defendant Vidmar's Assertion of Discretionary Immunity Pursuant Government Code Section 820.2 as a Defense Fails Because Statutory Immunity Provisions Do Not Apply to Federal Civil Rights Actions.

 Defendant Vidmar relies on Section 820.2 of the California Government Code to argue that her actions against Williams were discretionary acts for which

she is absolutely immune from suit. (Motion ¶ 21:1–2). The Ninth Circuit has held that state statutory immunity provisions do not apply to federal civil rights actions. *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir.1984). The Court explained, "To construe a federal statute to allow a state immunity defense 'to have controlling effect would transmute a basic guarantee into an illusory promise,' which the supremacy clause does not allow." *Id.,* at 1382 (citations omitted). Therefore, Defendant Vidmar's motion to dismiss based on discretion immunity is denied.

### V. CONCLUSION

For the reasons set forth in this Order, Defendants' motion to dismiss is DENIED as to Claim One, and GRANTED as to Claims Two, Three and Four. To avoid confusion as the case proceeds, on or before **May 13, 2005,** Plaintiff Williams shall file an amended complaint which contains only the allowed claim. Defendants shall file a response to the amended complaint no later than **15 days** following filing and service of the amended complaint.